Robert E. DARLING and Virginia K. Darling

v.

The UNITED STATES.

No. 63–64.

United States Court of Claims.
April 14, 1967.

---

John M. Donahue, Hartford, Conn., for plaintiffs Elliott C. Miller and Robinson, Robinson & Cole, Hartford, Conn., of counsel.

Edna G. Parker, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner Herbert N. Maletz with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on January 16, 1967. Defendant has filed no exceptions or brief on this report and the time for so filing pursuant to the Rules of the court has expired. On March 6, 1967, plaintiffs filed a motion that the court adopt the opinion, findings of fact and conclusion of law in this case. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Plaintiffs are therefore entitled to recover and judgment is entered for plaintiffs with the amount thereof to be determined pursuant to Rule 47(c).

### OPINION OF COMMISSIONER*

MALETZ, Commissioner:

This case involves section 170(b) (1) (D) of the Internal Revenue Code of 1954 (26 U.S.C. § 170(b) (1) (D) (1958)) which provides in part that no charitable deduction may be taken by the grantor of a trust for the value of any interest in property transferred in trust if the grantor has a reversionary interest in the corpus or income which exceeds five per cent of the value of the property.[1] In issue is whether a gran-

---

* The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57 (a).

1. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

   (a) *Allowance of deduction.—*
   (1) *General rule.—*There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. * * *
   * * * * *
   (b) *Limitations.—*
   (1) *Individuals.—* * * *
   * * * * *

(D) *Denial of deduction in case of certain transfers in trust.—*No deduction shall be allowed under this section for the value of any interest in property transferred after March 9, 1954, to a trust if—

   (i) the grantor has a reversionary interest in the corpus or income of that portion of the trust with respect to which a deduction would (but for this subparagraph) be allowable under this section; and

   (ii) at the time of the transfer the value of such reversionary interest exceeds 5 percent of the value of the

tor who creates irrevocable trusts which require a fixed amount to be paid to charity but which also give the corporate trustee discretion to apply trust income or corpus for the support, maintenance and education of the grantor's children is entitled to charitable contribution deductions for income tax purposes. Resolution of this issue turns on whether the grantor had, within the meaning of section 170(b) (1) (D), a reversionary interest in the trusts which had a value of over five per cent of the property transferred in trust.

The facts are not in dispute. In November 1955, Robert E. Darling (hereafter referred to as plaintiff) [2] established six similar irrevocable trusts consisting of two trusts for the ultimate benefit of each of his three then minor children. Plaintiff and a bank (hereafter referred to as the corporate trustee) were named as trustees. Each of these trusts had a corpus of some $52,000 and was to continue until the death of the survivor of plaintiff's wife and the child beneficiary. Upon the death of the survivor, the remainder was to be paid to a designated class of remaindermen.

■ Each trust had a charitable charge of $11,000 which had to be paid, with interest, either from the income or principal of the trust within 44 years or less, the plaintiff retaining the power to choose the specific charitable donees and the portion of the charge each was to receive.[3] Each payment to such donees reduced the charitable charge by the amount of the payment. The trust instrument also gave the corporate trustee the right "in its absolute discretion"

to apply "any or all" of the trust income or principal for the use of the plaintiff's minor child-beneficiary's "care, comfort, education and welfare." No distribution could be made, however, if it would reduce the trust funds to an amount less than 150 per cent of the then unsatisfied charitable charge.

The trust provisions allowed the plaintiff to increase the charitable charge upon each trust at any time but only on condition that the amount of his contribution to principal equalled at least 150 per cent of the additional charge for charitable purposes. Pursuant to these provisions, plaintiff in January 1956 transferred stock worth some $45,000 to each of the six trusts, increasing the charitable charge of each trust by $12,000. In December 1956, plaintiff made an additional transfer to each of the trusts of stock worth some $12,000 increasing the charitable charge on each by $1,500. In December 1957, plaintiff created three additional irrevocable trusts, one for the ultimate benefit of each of his three then minor children and his family. These trusts were identical except for the name of the child who was the beneficiary thereof, and their terms and provisions were generally the same as the six trusts created in November 1955. Each of these three trusts had a corpus of stock valued at approximately $114,000 and contained a charitable charge of $27,500.

In their joint income tax returns for the calendar years 1955, 1956 and 1957, plaintiff and his wife claimed charitable contribution deductions under section 170 of the Internal Revenue Code of 1954 for the charitable charges imposed

property constituting such portion of the trust.

For purposes of this subparagraph, a power exercisable by the grantor or a nonadverse party (within the meaning of section 672(b)), or both, to revest in the grantor property or income therefrom shall be treated as a reversionary interest.

2. Virginia K. Darling is a party to this suit by virtue of filing joint federal income tax returns with her husband.

3. A contribution to a trust for the use of a qualified charitable organization is deductible by the grantor in the year the contribution is made, even though the charity may not under the terms of the trust receive the contribution until a later date. Bowman, 16 B.T.A. 1157 (1929); Danz, 18 T.C. 454 (1952).

on the trusts for these years. These deductions were denied on the ground that the plaintiff had a reversionary interest in excess of five per cent of the principal or income of the trusts within the meaning of section 170(b) (1) (D) as defined by the regulations thereto;[4] and a deficiency was assessed.[5]

Section 170(b) (1) (D) was a new provision which originated on the floor of the House in 1954 as an amendment to the bill (H.R. 8300) that was subsequently enacted as the Internal Revenue Code of 1954. See 100 Cong.Rec. 3560 (1954). As explained on the floor (ibid): "[I]ts purpose is to plug the loophole which has been in existing law. The loophole was made more apparent at the time the committee adopted the liberalization policy in regard to charitable trusts created for a term of years with revisionary [sic] rights to the grantor. Under existing law, by means of these term charity trusts, a grantor was able in effect to get two deductions, first for the amount which was deducted from his gross income and then again the same amount as a charitable deduction. This amendment simply provides that only one deduction, the deduction from gross income is granted, and the charitable deduction is not granted."[6]

4. Section 1.170–2 of the Income Tax Regulations (1954 Code) provides in part:

(d) *Denial of deduction in case of certain transfers in trust—(1) Reversionary interest in grantor.* No charitable deduction will be allowed for the value of any interest in property transferred to a trust after March 9, 1954, if the grantor at the time of the transfer has a reversionary interest in the corpus or income and the value of such reversionary interest exceeds 5 percent of the total value on which the charitable deduction would, but for section 170(b) (1) (D), be determined. For purposes of this paragraph, the term *"reversionary interest" means a possibility that after the possession or enjoyment of property or its income has been obtained by a charitable donee, the property or its income may revest in the grantor or his estate, or may be subject to a power exercisable* by the grantor or *a nonadverse party* (within the meaning of section 672(b)), or both, *to revest in, or return to or for the benefit of, the grantor* or his estate *the property or income therefrom.* * * * [Emphasis supplied.]

5. The ruling was subsequently published as Rev.Rul. 61–223, 1961–2 CB 125.

6. More particularly, the "loophole" to which reference was made stemmed from the fact that under existing law an individual could transfer property in trust for a period of up to ten years without being taxed on the trust income and could also obtain a charitable deduction for the present value of an assigned income interest, if transferred to a charitable organization. See Treas.Reg. 111 §§ 29.22(a)–21, 29.23(o)–1; Rev.Rul. 194, 1953–2 CB 128. The "loophole" was made more apparent by the proposal to add section 673 (b) to the 1954 Code to allow the grantor of a trust whose income was irrevocably payable for at least two years to specific charities to exclude such income from his tax during that period even if he retained a reversionary interest in the trust at the end of that period. Although the income was not taxable to the grantor, he would nevertheless be entitled to a charitable deduction equal to the present value of the income placed in trust. As pointed out in the minority report of the House Ways and Means Committee, this would actually permit the high-bracket taxpayer to make money by giving it away: "For example, [the minority stated] if the taxpayer's highest tax rate is 90 percent and he owns property producing a yearly income of $5,000, over 2 years he will have $10,000 in income, pay $9,000 in taxes, and retain $1,000 after taxes. However, if the taxpayer desires to increase his retained income from the property 800 per cent, he need only make a gift of the 2-year income in trust for a charity. The charitable deduction of approximately $10,000 to which he thereby becomes entitled will reduce the taxes he would otherwise pay by $9,000. Thus, by giving up, through the charitable gift, the $1,000 which he would have retained after taxes, he will receive in exchange a $9,000 reduction in taxes. The result is an increase of $8,000 in his income after taxes (the savings in taxes of $9,000 less the net gift, after taxes, of $1,000 of income)." H.Rept. No. 1337, 83d Cong., 2d sess., pp. 1310–11 (1954) (minority views). See also Rea, Changes in the Internal Revenue Code of 1954 Affecting Charitable Organizations, 27 Rocky Mt.L.Rev. 270, 274–75 (1955); Lowndes, Tax Advantages of Charitable Gifts, 46 Va.L.Rev. 394, 414–16 (1960).

See also S.Rep. No. 1622, 83d Cong., 2d Sess., pp. 208–09 (1954) (3 U.S.Code Cong. & Adm. News, p. 4845 (1954)). Save for these statements of Congressional purpose, the legislative history of the section throws little light upon the scope of its operation, and provides no indication as to what constitutes a reversionary interest [7] or how it is to be valued. The regulation, however, defines a reversionary interest broadly to include a possibility that the trust property or its income will be subject to a power exercisable by a nonadverse party to use that property or the income for the benefit of the grantor. See note 4. It is the defendant's contention that the discretionary power given to the corporate trustee to distribute principal or income to the plaintiff's minor children is a reversionary interest within the meaning of this regulation. Since the grantor has the legal obligation to support his children,[8] defendant argues that there is a possibility that the trustee will use trust funds to meet this obligation and thereby use the corpus or income of the trust for the "benefit of the grantor" as these words are used in the regulation. Plaintiff contends that such a discretionary power exercisable by a trustee does not fall within the definition of a "revisionary interest" as that term is used in the statute and regulation, and, in the alternative, that if the regulation covers such a dis-

cretionary power, it is invalid as an improper extension of the statute.

■ Which contention is the correct one need not be decided, for even if it is assumed that such a discretionary support power in the hands of a trustee is a reversionary interest in the grantor for purposes of section 170(b) (1) (D), it is clear from the record that the reversionary interest did not have a value in excess of five per cent of the value of the property transferred in trust. The defendant asserts that the computation of the value of plaintiff's reversionary interest is a simple matter of arithmetic; it merely subtracts the charitable charge from the corpus of the trust to arrive at what it considers to be the value of the reversionary interest.[9] But such an arithmetic computation merely sets forth the value of the amount the corporate trustee could have distributed to the minor, ignoring the fact that the critical inquiry is not the value of the property that is subject to the reversionary interest but the value of the reversionary interest itself. In other words, defendant's computation tells us only the *amount* of the trust subject to the trustee's discretion and does not tell us the value of the *probability* that this discretion will be exercised. And it is the *probability* that the plaintiff's support obligation will be met from the trust funds that is defined as the reversionary interest.[10] See note

---

7. It is to be noted, though, that the term "reversionary interest" is not new to the tax law and is used in other sections— *e.g.*, sections 673 and 2037—of the 1954 Code.

8. In Connecticut where plaintiff resides "[i]t shall be the duty of the husband to support his family, and his property when found shall be first applied to satisfy [this liability]." Conn.Gen.Stat. § 46–10 (1958). See also State v. Moran, 99 Conn. 115, 119, 121 A. 277, 279, 36 A.L.R. 862 (1923); State v. Kelly, 100 Conn. 727, 730, 125 A. 95, 95–96 (1924); Zybura v. Zybura, 142 Conn. 553, 557, 115 A.2d 452, 454 (1955).

9. Defendant points out, for example, that under one of the trusts created in Novem-

ber 1955 for a minor child, the corporate trustee received a corpus with a value of $52,885.14, subject to a charitable charge of $11,000. It notes that even though the trust provisions prohibited any distribution which would reduce the fund to less than 150 per cent of the unsatisfied charitable charge (i.e., $16,500), there would still be left $36,385.14 that the corporate trustee could distribute to the minor—an amount which, defendant emphasizes, far exceeds 5 per cent of the $52,-885.14 transferred.

10. Since 1949 the estate tax provisions of the Code have likewise contained a five per cent rule for valuing reversionary interests so that property previously transferred by a decedent is includible in his gross estate if he still had at the time of

4. Defendant's contention is analogous to valuing a reversion after a life estate by assuming that the life tenant will die immediately rather than at the end of his actuarial life expectancy. Such a computation would only show the greatest amount that could revert to the grantor and not the probable sum that would remain at the expiration of the life estate. In short, what must be valued here is not the amount which the corporate trustee could distribute immediately if it were of a mind to do so, but the probability as of the dates the transfers to the trusts were made that the corporate trustee would exercise its discretion, during plaintiff's lifetime, to make payments to plaintiff's children in discharge of plaintiff's legal support obligation to them.

Viewed in this perspective, it is apparent from the record that the probability that the corporate trustee would exercise this discretionary power was factually so remote as to be negligible. It is quite true that the trust instrument gave the corporate trustee absolute discretion to distribute principal or income to the plaintiff's children for their support, but this discretionary power not only may not be abused (see Scott on Trusts § 187), it must be considered in the context of applicable State law. See e. g., Helvering v. Stuart, 317 U.S. 154, 161–166, 63 S.Ct. 140, 87 L. Ed. 154 (1942). The rule in Connecticut regarding discretionary trusts is that the trustee, in determining whether to expend trust funds for the beneficiary's support, is entitled to take into consideration any other means of support available to the beneficiary. City of Bridgeport v. Reilly, 133 Conn. 31, 47 A.2d 865 (1946); Auchincloss v. City Bank Farmers Trust Co., 136 Conn. 266, 70 A.2d 105 (1949). This, it would seem clear, is what the corporate trustee as a prudent fiduciary would do in the present situation, especially since one of its primary obligations is to conserve the trust property. See Scott, op. cit. supra, §§ 174, 176. In thus taking into account the other means of support available to plaintiff's children, it would be highly unlikely that the trustee would ever distribute trust funds to them in discharge of plaintiff's legal obligation of support. For one thing, plaintiff-grantor's adjusted gross income for each of the years when the transfers to the trusts were made was in excess of $400,-000 (of which over $367,000 a year was investment income) so that the probability was obvious that he would be able to support from his own funds those beneficiaries of the trusts to whom he owed the legal obligation of support.[11] Under these circumstances, the corporate trustee would not have to use the resources of the trusts for the purpose of discharging plaintiff's obligation to support those beneficiaries. Furthermore, during the years in question, the adjusted gross income of each of the three minor children ranged from some $11,000 to $17,000 a year and was rising each year.[12] Added to this is the fact

his death a reversionary interest in the property exceeding five per cent of its value. See section 811(c) (2) of the 1939 Code, now section 2037 of the 1954 Code. The Committee reports on section 2037 make clear that the five per cent reversionary requirement must be determined on the basis of probability, i.e., that the decedent must have had "prior to his death * * * 1 chance in 20 that the property would be returned to him." H. Rep.No.1337, 83d Cong., 2d Sess. (1954) (3 U.S.Code Cong. & Adm.News (1954) p. 4117); S.Rep.No.1622, 83d Cong., 2d Sess. (1954) (3 U.S.Code Cong. & Adm. News (1954) p. 4756).

11. The father's support obligation to his children requires him to furnish them "with such necessaries as the law deems essential to [their] health and comfort, including suitable clothing, lodging, food and medical attendance." State v. Moran, 99 Conn. 115, 119–120, 121 A. 277, 279, 36 A.L.R. 862 (1923).

12. The general rule in Connecticut requires that other resources of the beneficiary, both principal and income, must be substantially exhausted before any invasion of the corpus of a trust is authorized. Guaranty Trust Co. of New York v. New York City Cancer Comm., 145 Conn. 542, 144 A.2d 535 (1958).

that when the transfers to the trusts were made, only a relatively short period remained before the children would reach their majority,[13] at which time plaintiff's support obligation would come to an end for all practical purposes.[14]

◼◼ Moreover, the rule in Connecticut, when considering the propriety of a trustee's use or non-use of his discretionary support power, is to measure the trustee's action by looking to the grantor's intention "in the light of any relevant circumstances." Auchincloss v. City Bank Farmers Trust Co., supra, 136 Conn. at 271, 70 A.2d at 107; Stempel v. Middletown Trust Co., 127 Conn. 206, 220, 15 A.2d 305, 311, 157 A.L.R. 657 (1940); Bridgeport-City Trust Co. v. Beach, 119 Conn. 131, 137–138, 174 A. 308, 311 (1934); City of Bridgeport v. Reilly, supra, 133 Conn. at 38–39, 47 A. 2d at 867–868; Hull v. Holloway, 58 Conn. 210, 217, 20 A. 445 (1889). In the present case the plaintiff-grantor's intention appears clear that the discretionary power was not to be used except in instances of necessity and that action by the corporate trustee contrary to this intention would be unwarranted. In Article Fourth of each trust the plaintiff-grantor states that he "wishes to impress upon the Corporate Trustee in the strongest possible manner, but without abridging the absolute discretion hereinbefore granted to it, that his wife's interests and her comfort and well-being are the * *

[grantor's] first consideration and that accordingly it is his strong desire that after his death, if she shall survive him," the corporate trustee pay to or apply to her use as much of the income and principal "as it may deem necessary, taking into consideration her available receipts from other sources and all other circumstances, to enable her to maintain the standards of living which she shall have maintained during the * * * [grantor's] life." After his wife's death, the same recommendations are made with respect to the named child-beneficiary "so that he may maintain the station in life that the * * * [grantor] maintained." Such language indicates that the corporate trustee is to manage the trust funds so as to provide adequately for the plaintiff's wife after his death. Making unneeded distributions to minor children would be contrary to such purpose since it would serve to reduce the funds available for plaintiff's wife—and for the children after the death of the parents.

◼ In addition, it seems obvious that an important reason for establishing the trusts—apart from plaintiff's desire to provide for his wife and children—was to exclude the trust income from plaintiff's high tax bracket.[15] However, any distribution by the corporate trustee which would satisfy plaintiff's support obligation under Connecticut law would be taxable to plaintiff under section 677(b). This would deny the income-

13. For example, when the initial trusts were created in November 1955, plaintiff's minor son was 18½ years old, and his two daughters aged 15½ years and 12¾ years, respectively. When the December 1957 trusts were created, less than six months remained for the son to reach his majority, while 3½ and 6¼ years, respectively, remained for the daughters to reach their majority.

14. In Connecticut a father has the duty to support an adult child only if such child is a pauper and unable to support himself and the father is able to support the child. Conn.Gen., Stat. § 17–320 (1958); Zdanowich v. Sherwood, 19 Conn.Sup. 89, 93,

110 A.2d 290, 293 (Super.Ct.1954). Such an occurrence would seem so remote in this case as to require no consideration.

15. Under section 677(b) of the 1954 Code, trust income is not taxable to the grantor merely because such income may in the trustee's discretion be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain. To the extent, however, that the trust income is actually applied or distributed for that purpose, the section requires that it be included in the grantor's gross income.

shifting benefit as to such distributions that the creation of the trusts was meant to achieve. In such circumstances and considering the financial resources of plaintiff and his children, it would be most unlikely that the corporate trustee would thwart this important objective by distributing trust funds to discharge plaintiff's support obligations.

In summary, the possibility as of the dates the transfers to the trusts were made that the corporate trustee would exercise its discretionary power, during plaintiff's lifetime, to make distributions to plaintiff's children for support purposes was factually so improbable as to be negligible.[16] Accordingly, even if it be assumed that the plaintiff had a reversionary interest in these trusts, it is an interest whose value was not in excess of five per cent of the trust property. Since section 170(b) (1) (D) does not apply to such a reversionary interest, the general rule of section 170(a) of the Code controls and plaintiff is entitled to the claimed charitable contributions deductions for 1955, 1956 and 1957.[17]

16. The problem presented here—whether there is a factual likelihood that a discretionary power will be exercised—is not novel. For example, the question frequently arises under the estate tax as to whether a bequest of a remainder to charity, after a prior estate to a non-charitable beneficiary, is deductible from the gross estate as a charitable gift, which question turns on whether the charitable contribution had an ascertainable value at the time of the testator's death. In Millard v. Humphrey, 8 F.Supp. 784, 786–788 (W.D.N.Y.1934), aff'd 79 F.2d 107 (2d Cir. 1935), decedent left a trust, the income of which was to be paid to his wife for life and the remainder was to be paid to charity. The wife was given the right to invade the principal of the trust for her support. When a charitable deduction for estate tax purposes for the remainder was claimed, the government denied the deduction on the ground that the remainder had no ascertainable value since the wife before her death could consume the entire principal of the trust. Upon considering the wife's financial position and her mode of living, the court held that there was no reasonable possibility that the corpus would ever be invaded and, therefore, allowed a deduction for the remainder interest on the assumption that the discretionary support power in the wife would never be exercised. See also e.g., Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Commissioner of Internal Revenue v. Bank of America National Trust & Savings Assn., 133 F.2d 753–755 (9th Cir. 1943); Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287, 292 (2d Cir. 1954); Edwin E. Jack, 6 T.C. 241, 245 (1946). See also Treas.Reg. § 20.2055–2(b) (1958).

17. In view of this conclusion, it is unnecessary to pass upon plaintiff's alternative contentions (i) that he did not have a reversionary interest in those portions of each trust which were safeguarded for the charitable beneficiaries, and (ii) that even if he had a reversionary interest, the interest is not susceptible of valuation and, therefore, under the analogy of section 2037 of the 1954 Code dealing with the estate tax, it had as a matter of law a zero value. See Lowndes & Kramer, Federal Estate & Gift Taxes (2d ed.) § 7.7, p. 114.