George M. JONES, Jr. and Eleanor M. Jones, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 17432, 17433.

United States Court of Appeals
Sixth Circuit.

May 29, 1968.

G. C. Sharfy, Toledo, Ohio, John J. Kendrick, Toledo, Ohio, on brief; Shumaker, Loop & Kendrick, Toledo, Ohio, of counsel, for appellants.

Carolyn R. Just, Department of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Department of Jus-

tice, Washington, D. C., on brief; Merle M. McCurdy, U. S. Atty., John G. Mattimoe, Asst. U. S. Atty., Cleveland, Ohio, of counsel, for appellee.

Before PECK, McCREE, and COMBS, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from judgments in favor of the government in two suits, consolidated for trial before the District Court sitting without a jury, involving the income tax consequences of taxpayer's donation of annuities to a charitable foundation.

In 1928, taxpayer Eleanor M. Jones[1] purchased two single-premium ten year endowment policies, one from State Mutual Life Assurance Company for $41,520 and one from Massachusetts Mutual Life Insurance Company for $331,800. At maturity in 1938, the values of these policies were, respectively, $59,357.59 and $478,466.93. In 1938, taxpayer elected to receive the proceeds of the policies in quarter-annual installments. Massachusetts Mutual was to pay 100 quarter-annual installments of $4,784.68 each, with interest to be accumulated for payment at the end of the 25-year period. State Mutual was to pay quarter-annual installments of $675 each until the proceeds of the policy and interest thereon were exhausted, but if the balance in 1963 exceeded $1,000, taxpayer could withdraw the balance in a lump sum or exercise one of several settlement options. In the event of taxpayer's death during the 25-year period during which installments were to be paid under the policies, the benefits of each policy were to be conferred upon her son, George M. Jones, III, if living, or if deceased, upon other designated beneficiaries.

In 1953, taxpayer assigned her interest in the State Mutual policy to the Clement O. Miniger Memorial Foundation, a charitable organization, contributions to which were deductible under the Internal Revenue Code, which had earlier been established in memory of her father. In 1954, she assigned 15 per cent of her interest in the Massachusetts Mutual policy to the foundation, and in later years she assigned additional percentage interests in the policy until the remainder was relinquished in 1961. She valued her 1953 gift at $38,850, and deducted this amount from her gross income as a charitable contribution for that year. The 1954 gift was valued at $51,696.63, and this amount was deducted as a charitable contribution from her 1954 gross income.[2]

The Commissioner disallowed both claimed charitable deductions, and allowed instead deductions in the amounts of the payments actually received by the foundation in 1953 and 1954. He also included in taxpayer's income for 1954 the amounts she would have reported as annuity income under the policies had she not made the gifts.[3] Taxpayer paid the additional tax due as a result of these recalculations, and sued for a refund in the District Court. The District Court, 252 F.Supp. 256, held that the Commissioner was correct both in disallowing taxpayer's charitable deductions for 1953 and 1954 and in increasing her 1954 income.

Two grounds are advanced by the government in support of the disallowance of the deductions. First, it is observed that under the statutes in effect

---

1. The term "taxpayer" will be used to refer to Eleanor M. Jones. Her husband, George M. Jones, Jr., is a party because a joint return was filed.

2. In valuing her gifts, taxpayer took into account the possibility that she would not survive until the end of the 25-year period and reduced the values of the gifts accordingly.

3. The Commissioner also increased taxpayer's annuity income for 1953, but the government conceded that this increase was erroneous since, under the statutes and regulations then in force, taxpayer was entitled to recover the cost of the policies tax-free and had not done so by 1953.

at the time of each gift, a deduction could be taken only for gifts "payment of which is made within the taxable year." Int.Rev.Code of 1939, § 23; Int. Rev.Code of 1954, § 170. The government contends that because the amounts payable under the policies would be received by the foundation over a 25-year period, with only a small portion received during the tax years in question, these statutes would prohibit deductions based on the entire value of the policies. As the government recognizes, however, these statutes were enacted to eliminate the uncertainty caused by the different treatment of charitable deductions by accrual and cash basis taxpayers, and accomplished this end by prohibiting a deduction prior to the actual transfer of the charitable gift. In the instant case, taxpayer actually transferred ownership of the policies to the foundation in the tax years involved, even though payments under the policies would be made over a period of several years. Under these circumstances, the cited statutes would not preclude a deduction based on the entire value of the policies. Cf. Darling v. United States, 375 F.2d 843, 846, 179 Ct.Cl. 891 (1967).

The government's second contention, with which the District Court agreed, and upon which its decision was based, rests on the fact that in the event of taxpayer's death prior to 1963, payments to the foundation under the policies would terminate. Treas. Reg. § 1.170-1(e) (1958) provides:

(e) *Transfers subject to a condition or a power.* If as of the date of a gift a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an interest passes to or is vested in charity on the date of the gift and the interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable on the date of the gift, the deduction is allowable. * * *

The government contends that this regulation applies directly to the 1954 gift and in principle to the 1953 gift, and that the possibility, considered at the time of the transfers, that the foundation would as a result of taxpayer's death be deprived of the benefits of the gifts, was not highly improbable.[4] Hence, it argues that the deductions were properly disallowed.

We will accept *arguendo* that the cited regulation is consistent with the 1939 and 1954 Codes. The government employing U. S. Life Table 38 (based on the 1940 census) estimated the possibility, as of the time of the 1953 gift, that taxpayer, then 48 years old, would be dead in 1963 and that her son, then 10, would survive her[5] at approximately 11.1 per cent. Using the same actuarial data, the possibility at the time of the 1954 gift was estimated at approximately 10.4 percent. Taxpayer, relying on U. S. Life Tables 5 and 6 (based on the 1950 census), estimated the respective possibilities at approximately 6.9 per cent and 6.4 per cent. The government does not question the reliability of taxpayer's data or the accuracy of her computations, but contends that regardless of whether its estimates or taxpayer's estimates are used, the chance that the foundation would not receive the proceeds of the policies was too large to permit the deductions.

---

4. The government suggests that the gifts involved here are subject to conditions precedent, and that the proper standard for deductibility is therefore whether the chance that the gifts will not become effective is "so remote as to be negligible." On our view of taxpayer's transfers, the proper standard is whether the chance that the gifts will be defeated is highly improbable. We do not, however, rest our decision on the difference, if any, between these two standards.

5. This is the specific contingency which would have caused the payments to the foundation to cease.

This is not a case like Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955), upon which the government places much reliance. In *Sternberger,* an estate tax decision, a charitable bequest was to take effect only if decedent's childless 27-year-old daughter died without descendents surviving her. The mathematical possibility of this contingency was complicated by an element of volition, since the opportunity of obtaining the bequest provided the daughter with a substantial inducement to marry and have children. The instant case involves no such complication; as observed in United States v. Dean, 224 F.2d 26, 28 (1st Cir. 1955), it would be preposterous to assume that a party would commit suicide to defeat the charitable gift. The Court in *Dean* went on to state:

> [W]e held that the chance that one person would survive another of the same age, * * * being 50-50, was definitely not a chance so remote as as to be negligible. We did indicate, however, that if the chance that charity would take depended upon a person aged 30 surviving a person aged 90, then it could safely be said that the chance that charity would not take would be so remote as to be negligible and the deduction would be allowable.

> The line between those chances which are so remote as to be negligible and those which are not lies somewhere between these extremes. We can only decide specific cases as they arise using the best judgment we have in placing them on one side or the other of the line. And there is no standard to guide us except our estimate of the extent of the encouragement tax-wise which Congress wished to give testators to make gifts to charity. 224 F.2d at 29.

■ In making such a judgment in the instant case, we observe that were we sitting as triers of fact, we would utilize the estimates suggested by the taxpayer rather than those suggested by the government. Although, as the government notes in its brief, Treasury Regulations prescribe the use of Life Table 38 for the valuation of certain gifts (see Treas. Reg. § 1.170–2(d) (2); Treas. Reg. § 25.2512–5(e)), the issue here is not the valuation of a gift but of the chance that the benefits of a gift will be realized by a particular donee. In any event, these regulations, even if applicable, would not require that the prescribed data be used to the exclusion of all other information. Cf. Hall v. United States, 353 F.2d 500 (7th Cir. 1965). Taxpayer's estimates are concededly based on a more recent census, and there is therefore reason to believe that they reflect the relevant possibilities with greater accuracy.

■ Even utilizing the government's estimates, we hold that on the facts of this case the defeat of the foundation's interest in the gifts was highly improbable at the time of donation, and that the District Court therefore erroneously upheld the Commissioner's disallowance of the gifts. It should be noted that the estimates of 11.1 per cent and 10.4 per cent for 1953 and 1954, respectively, are estimates of the possibility of taxpayer's death by 1963, and as such are not estimates of the possibility of the foundation receiving no payments at all, since quarter-annual payments were to be made during the intervening years. This case is therefore unlike *Dean,* supra, where, although a 9 per cent possibility of a charitable gift not taking effect was held not to be so remote as to be negligible, the non-occurrence of the contingency upon which the effectiveness of the gift depended would have defeated the gift entirely.

We consider next the propriety of including in taxpayer's income for 1954 the amount of annuity income which she would have reported for that year had she not made the gifts to the foundation in 1953 and 1954. The government contends that the payments made to the foundation in 1954 represented income which had been earned while taxpayer owned the policies, and that

the 1953 and 1954 gifts were therefore anticipatory assignments of income properly taxable to taxpayer. Reliance is placed upon Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940) and upon our decisions in Austin v. Commissioner of Internal Revenue, 161 F.2d 666 (6th Cir. 1947), cert. denied, 332 U.S. 767, 68 S.Ct. 75, 92 L.Ed. 352 (1947), and Friedman v. Commissioner of Internal Revenue, 346 F.2d 506 (6th Cir. 1965). Taxpayer asserts that she cannot be taxed on the 1954 payments because she relinquished not only income but also the property which produced it, and that, insofar as the income from the policy transferred in 1953 is concerned, she cannot be taxed on payments other than those made in the year of the gift.

We find that neither consideration advanced by taxpayer would preclude taxing her on the payments involved here. The fact that she donated the policies, and not simply the income earned thereunder, might exempt her from taxation on income earned subsequent to the time of the gift. See Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937). Relinquishment of the figurative tree, however, will not prevent taxation of the fruit which has already ripened upon it. *Austin,* supra; *Friedman,* supra. Furthermore although the cases relied upon by the government involved taxation of payments made in the same tax year as the gift, we find no illegality in the imposition of tax liability in 1954 for payments made in that year under a policy donated in 1953.[6]

It should be added that the policies involved here continued to earn interest subsequent to the time of the gifts, and that our decision should not be taken to suggest that all payments made to the foundation subsequent to 1954 necessarily subject taxpayer to liability. We hold only that taxpayer has failed to show any illegality in the 1954 assessment. With regard to the State Mutual policy donated in 1953, taxpayer has failed to demonstrate that the increments earned up to and including 1953 were insufficient to account for the payments to the foundation in 1954. With regard to the Massachusetts Mutual policy donated in 1954, all interest subsequent to 1938 was to be accumulated for payment in 1963, and the payments in 1954 must therefore have been earned prior to the time of the gift.

The judgment of the District Court is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion.

---

**6.** In Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940), the Supreme Court stated: "The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it." 311 U.S. at 118, 61 S.Ct. at 147. It has been suggested that this language is inconsistent with the taxation of income in a year later than that of the gift. See 2 Mertens, Law of Federal Income Taxation § 18.02. A possible response is that if the exercise of a power to procure the payment of income to another is a realization, the realization need not be regarded as occurring until the payment is actually made.