## HELD AT HARTFORD, FOR THE COUNTIES OF HARTFORD, WINDHAM, LITCHFIELD, MIDDLESEX AND TOLLAND.

### ON THE FIRST TUESDAY OF MARCH, 1885.

Present,

PARK, C. J., CARPENTER, LOOMIS, GRANGER AND SANFORD, JS.*

## HENRY B. GRAVES vs. ALMA E. ATWOOD.

A father conveyed to his son certain real estate by a warranty deed which contained the following clause :—" The condition of this deed is such that I hereby reserve all my right, title and interest in said pieces of land during my natural life." Held, that the reservation was not void as repugnant to the grant, but was a valid reservation of a life estate out of the land granted.

The sole consideration of the conveyance was the agreement of the son to support the father during life. Held to be a good consideration.

The real estate conveyed was all that the grantor owned; and he owed at the time $1,800, but had $3,000 standing to his credit at a savings bank in this state. The court below found that the conveyance was not made with intent to defraud or delay creditors. Held that it could not be regarded as fraudulent as a matter of law.

Money in a savings bank is not to be regarded as so far out of the reach of creditors that the law can consider it as concealed or disregard it in determining whether the owner has property for the payment of his debts.

[Argued March 4th—decided March 27th, 1885.]

ACTION for the recovery of possession of several parcels of land with rents and profits; brought to the Superior

---

* Judge SANFORD of the Superior Court sat in the place of Judge PARDEE absent on account of ill health.

Court in Litchfield County, and tried to the court before *Beardsley, J.* Facts found and judgment rendered for the defendant. Appeal by the plaintiff. The case is sufficiently stated in the opinion.

*H. B. Graves* and *J. Huntington,* for the appellant.

*W. Cothren* and *W. H. Williams,* for the appellee.

Loomis, J. The plaintiff complains that the defendant wrongfully dispossessed him, and continues to keep him out of the possession of several pieces of land situated in the town of Woodbury. He asked for restoration of possession and for the rents and profits. The Superior Court having rendered judgment against him, he appealed.

On the 17th day of March, 1868, Warner Atwood of Woodbury, the owner and possessor of these pieces of land, conveyed all of them to his son, Noble Atwood, by a duly executed deed containing the usual covenants of warranty and seizin, together with this clause, namely:—" The condition of this deed is such that I hereby reserve all my right, title and interest in the aforesaid described pieces of land, with all the buildings thereon standing, during my natural life." He retained possession until his death, which occurred on August 15th, 1871. On the day of the execution of the deed he also made a voluntary conveyance of all his farming tools to his son. He was then indebted to the amount of about $1,800, but had to his credit in a savings bank in this state the sum of about $3,000. Subsequently he made a voluntary transfer of this to the defendant, the wife of Noble Atwood, and at the time of his death was without property. On October 7th, 1871, Noble Atwood conveyed said pieces of land to Fannie E. Hawley. On November 9th, 1871, the latter conveyed them to the defendant. These deeds were without consideration, and were executed for the sole purpose of passing the title from Noble Atwood to his wife. The latter was in possession of the lands at the commencement of this action.

VOL. LII.—33

Upon the death of Warner Atwood, intestate, the court of probate for the district of Woodbury duly granted administration on his estate. Upon proceedings properly had and in obedience to the order of the court of probate, on June 8th, 1882, the administrators sold the lands in controversy to the plaintiff at public auction and on the same day executed and delivered to him a deed thereof. Upon this rests his claim.

It is the contention of the plaintiff in his brief, first, that the deed from Warner Atwood to his son was a nullity because of the above recited condition; secondly, that if otherwise good, it is fraudulent and void as against creditors.

We cannot accede to these propositions. The deed is from a father to his son, executed, as it is found, after an understanding between them that the son should provide and care for the father during life. It is therefore quite certain that the father intended to accomplish some result; to grant something; and of course it is the duty of the court to give effect to his intent if lawful and if the language used to express it is legally sufficient for the purpose; and we can have no difficulty in seeing that he intended to pass the fee of the land at once to the son subject to an use for life. His words are "give, grant, bargain, sell and confirm;" and he binds himself by the covenants of warranty and seizin which form a part of the warranty deed in common use in this state. And the condition, read in the light of the grant, is to be interpreted as the reservation of the same measure of use thereafter as tenant for life, as he had theretofore enjoyed as owner.

In *Webster* v. *Webster*, 33 N. Hamp., 18, the court had before it a deed by which a father conveyed to his son land in fee simple, with the usual covenants of warranty, and this reservation, namely:—"Reserving all the right, title and interest in and unto the above-named land and buildings for and during my natural life." The father subsequently began to cut and carry away timber, and the son brought an action for waste. Of course he did not claim

that the reservation nullified the grant, only that it did not protect his father from impeachment for waste. Speaking upon this latter point the court said that when the father "reserved in his deed all his right, title and interest in and to the land and buildings conveyed, he employed the usual and proper words to reserve the land itself for his life, and no inference can be drawn from the language of the deed that anything more than a life estate was understood or intended to be reserved."

Again, the grantor, upon good consideration, gave, granted, bargained, sold and confirmed the lands to be held by the grantee, his heirs and assigns forever; and he bound himself, his heirs, and his executors and administrators, by covenant of warranty and seizin; using full and apt words whereby to empty himself of all title. If upon such a grant he had grafted, as the plaintiff insists that he did, a condition which utterly destroyed it, and left the unincumbered fee simple in himself, the grant and the condition being impossible together, the law, unwilling to declare the whole a nullity, says that in the words of the grant is embodied his true intent and that these shall stand rather than those of the repugnant condition.

In *Ward* v. *Ward*, 1 Martin (N. C.,) 28, a deed conveyed an estate absolutely, but in the premises, though not in the habendum, there was *an exception of the grantor's life-time in any part or parcel of the land*; and it was held that the fee passed immediately to the grantee and the reservation was void. In the case of *In re Young*, 11 R. Isl., 636, a father executed a warranty deed of land to his son, his heirs and assigns forever. Then followed a covenant of ownership and of general warranty; subsequent to these a reservation of the right and privilege for those who should be appointed to settle the grantor's affairs after his decease, to cut off and sell wood if necessary for payment of debts, &c. Held, that it was void as an exception, because repugnant to the grant. In 2 Cruise's Digest, part 7, tit. 13, chap. 1 sec. 22, a lease was to husband and wife and their son, with a proviso that if the son should demand any profits of the

lands or enter into the same during the life either of his father or mother, then the estate limited to him should be utterly void; held, that this condition was utterly void, for it was contrary to the estate limited before.  In Sheppard's Touchstone, 131, it is said that "if a feoffment be made of land in fee, on condition that the feoffee shall not enjoy the land, * * * the condition is void as repugnant to the estate." In 4 Kent's Comm., 131, it is said that "conditions are not sustained when they are repugnant to the nature of the estate granted, or infringe upon the essential enjoyment and independent rights of property, and tend manifestly to public inconvenience."

Secondly, the finding says that the deed from Warner Atwood was a voluntary conveyance.  It subsequently adds that although there was no money consideration for it, yet there was an understanding that the grantor should be cared for during his life by the grantee and his wife.  The meaning of the two paragraphs read together is not that the deed was voluntary in the narrow technical sense, only that between the father and his son no sum was agreed upon as the market value of the lands, of which present payment was made or for which an obligation was given, as would have been the case between strangers; but that the father was willing to accept the agreement of the son to support him during life, in the form in which it was made, as compensation.  It might be more valuable to the grantor than the lands; it might be less; no one could tell; as a matter of law such an agreement constituted a good consideration for the grant.

Again, although by the deed the grantor divested himself of all ownership of real estate, he still had a credit in a savings bank in this state larger than the aggregate of his indebtedness.  A large part of the wealth of the nation is in the form of the obligations of individuals, corporations, cities, states and the United States, of corporate shares and of credits in savings banks and banks of discount and deposit; wealth which, as compared with land, is in a sense invisible and intangible.  As a matter of fact it is not found,

Graves *v.* Atwood.

and as a matter of law we cannot say, that property in any one of these forms is less visible or tangible than in either of the others, nor that in any one of them is it to that degree invisible or intangible that it is to be disregarded in determining the question whether the owner has ability to pay his debts, or that it is secreted in a sense offensive to the law concerning fraudulent conveyances.

We cannot say that this gift by a father to a son of all his real estate and farming utensils, made as it is found without intent to defraud or delay creditors, is as a matter of legal necessity fraudulent and void, he retaining a credit in a savings bank in this state to an amount larger than his aggregate indebtedness.

In Bump on Fraudulent Conveyances, p. 283, it is said that " the donor must not only have ample means remaining to discharge all his obligations, but these means must be readily and conveniently accessible to his creditors. If the remaining property is heavily incumbered, or consists of the life estate of a person advanced in years, or in feeble health, or of property that cannot be taken on execution, or of property which is in its nature unstable and cannot be easily traced, or of depreciating commercial paper, or of the remnants of a stock of merchandise which diminishes each day in value, it is not sufficient." The foregoing instance of property which is unstable and not easily to be traced is taken from *Blackeney* v. *Kirkley*, 2 Nott & McCord, 544, and the reference is to a " few cattle, hogs and horses." It may be observed that in that case the gift was of a negro, the retention was of real estate. In *Mohawk Bank* v. *Atwater*, 2 Paige, 54, the retention was of wild land. There is therefore no absolute rule which in all cases puts land within and credits without the pale of availability.

There is no error in the judgment complained of.

In this opinion the other judges concurred.