UNITED STATES of America, Plaintiff,

v.

Clarence EDWARDS; Yvonne F. Edwards; National Savings Bank; Philip Trachten, Trustee; Arthur Lewis, Trustee; Chapel Medical Group P.C.; Yale New Haven Hospital; Tilo Company, Inc., Defendants.

Civ. No. N–78–359.

United States District Court, D. Connecticut.

Oct. 18, 1983.

---

Glenn L. Archer, Jr., Asst. Atty. Gen., D. Patrick Mullarkey, Reba A. Raffaelli, At-

tys., Tax Div., Dept. of Justice, Washington, D.C., Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., for plaintiff.

Irving H. Perlmutter, Ullman, Perlmutter & Sklaver, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

MESKILL, Circuit Judge, Sitting by Designation.

The Internal Revenue Service (IRS) brought this action to set aside a conveyance of property between the defendants as fraudulent, to declare valid the IRS' tax liens on said property and to order the foreclosure of the liens. Jurisdiction arises under 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7402 and 7403.

On October 10, 1978 the United States Attorney acting for the IRS filed a complaint against Clarence Edwards and Yvonne Edwards. Count I alleged unpaid taxes, interest and penalties totaling $20,-252.48 due from Clarence Edwards. The defendant's tax deficiencies included $682.52 in personal income taxes for the tax year 1971, joint liability of $2,658.77 with Yvonne Edwards for personal income taxes for the years 1975, 1976 and 1977, and penalties of $16,911.19 for unpaid withholding and social security taxes as the responsible person for Apollo Electric Company, Inc.[1] To cover these deficiencies the IRS demanded judgment and sought the foreclosure of tax liens that it had. placed against all personal and real property of Clarence Edwards.

Count II alleged that Yvonne Edwards was jointly liable with Clarence Edwards for $2,658.77 in personal taxes for the years 1975, 1976 and 1977. No claim was made that Yvonne Edwards shared liability for unpaid withholding and social security taxes as a responsible person of Apollo Electric Company, Inc. The IRS also sought the foreclosure of the tax liens that it had placed upon the assets of Yvonne Edwards to satisfy her tax deficiency.

In Count III, the IRS claimed that the defendants had fraudulently conveyed real property to avoid their tax liability. The alleged fraudulent conveyance involved the transfer of the property at 45 Clintonville Road, North Haven, Connecticut (Clintonville Road property) from Clarence Edwards to Yvonne Edwards in April 1973. At the time of the transfer, the IRS claimed, Clarence Edwards was insolvent or was rendered insolvent by the conveyance. The IRS also alleged that the transfer was made for inadequate consideration and with the intention of both Clarence and Yvonne Edwards of avoiding the collection of Clarence Edwards' debts, including those to the United States. The IRS, therefore, seeks a declaration that the transfer is void and ineffective against the United States. It then asks that the court declare the liens against Clarence Edwards' interest in the Clintonville Road property to be valid and that the liens against Clarence and Yvonne Edwards' interest in the Clintonville Road property be foreclosed.

Because the defendants did not respond to the complaint, default judgment was entered on January 26, 1981. On September 25, 1981 defendants petitioned the court to set aside the entry of the default judgment. The motion was granted by Judge Burns on September 28, 1981. At the motion hearing, counsel for both parties agreed that the amount of the assessments would not be challenged. Because the defendants admit the amount of their tax liability, the court need not consider the validity of the government's tax assessments under counts one and two.

There remains the difficult task of determining the true nature of the alleged fraudulent conveyance of the Clintonville

---

1. The penalties against Clarence Edwards were assessed under 26 U.S.C. § 6672 which states in pertinent part:

(a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

Road property and whether the transfer is valid against the claims of the IRS. The evidence in the case consists of a comprehensive file of the legal, financial and tax records of Clarence and Yvonne Edwards, as well as the testimony of the defendants and of Internal Revenue Agent Michael Guarnieri. Both parties, at the request of the Court, submitted proposed findings of fact and conclusions of law. Because a transcript was not prepared, the references to testimony are derived entirely from my notes taken during trial.

## HISTORY OF THE CASE

During 1972 Clarence Edwards was the sole shareholder of a small electrical contracting company, Apollo Electric Company, Inc. (Apollo Electric). Yvonne Edwards worked as a secretary at Apollo Electric during the same year. The company conducted its business from 777 Dixwell Avenue, New Haven, Connecticut (Dixwell Avenue property), a property which the company owned. Some time during that year, before the Clintonville Road property was purchased, Yvonne Edwards and Clarence Edwards decided to be married.

On September 12, 1972, Clarence Edwards purchased the Clintonville property for $33,000. Mr. Edwards paid the purchase price with $8,500 in cash and the proceeds from a $24,500 mortgage to National Savings Bank of New Haven, Connecticut. The mortgage agreement, executed by Mr. Edwards on September 29, 1972, specified a total monthly payment of $230.00, $177.10 principal and interest and $52.90 property tax escrow. (Pl.Ex. 1, 2 & 34).

Shortly after their marriage on December 2, 1972, the Edwardses took up residence at the Clintonville Road property. About five months after the marriage, on April 17, 1973, Clarence Edwards transferred the Clintonville Road property to Yvonne Ed-

wards by Quit Claim Deed. The deed, recorded on April 23, 1973, recited consideration of "[o]ne dollar and other valuable considerations, but less than $100.00." (Pl.Ex. 3).

At the time of the transfer, Clarence Edwards, personally or as sole shareholder of Apollo Electric, retained equity interests in two properties. Mr. Edwards jointly owned a two family frame dwelling at 69 Marlboro Street, Hamden, Connecticut (Marlboro Street property) with his former wife Lillian Edwards. (Pl.Ex. 31). The estimated value of this property was $40,-000. (Pl.Ex. 25). The building owned by Apollo Electric had an estimated value of $26,000. (Pl.Ex. 28).

When Mr. Edwards transferred the Clintonville Road property in April 1973, he and Apollo Electric were subject to several liabilities. The property at 69 Marlboro Street was subject to a first mortgage to the First New Haven National Bank, of New Haven, Connecticut, for $14,800 and a second mortgage to Vincent Palmeri, Sr. for $10,300. (Plaintiff's Trial Memorandum and Ex. 25). It appears that Clarence Edwards defaulted on the First New Haven National Bank mortgage because the mortgage was foreclosed on December 27, 1973. (Pl.Ex. 8). Two mortgages encumbered Apollo Electric's Dixwell Avenue property; the first was held by Owners Equity Corporation (Ruth G. and Alexander N. Caplan, trustees) for $12,605 and the second by Anthony Maresco for $4,657. (Pl.Ex. 28, 37 & 38). Mr. Edwards was probably in arrears in the payment of these two mortgages at the time of the Clintonville Road property transfer because each mortgagee filed a notice of *lis pendens* shortly thereafter.[2] The Dixwell Avenue property was also subject to a judgment lien of $5,124.95 entered on February 20, 1973 in favor of Grabbel-Lyons Distributors, Inc. (Hupp Credit Corporation).[3] Judgment had been entered by

---

**2.** Anthony Maresco filed notice of *lis pendens* on April 25, 1973; Owners Equity Corporation filed notice on May 16, 1973. (Pl.Ex. 37 & 38). A judgment of foreclosure was entered in favor of Owners Equity Corporation on August 24, 1973; title became absolute on March 26, 1974. (Pl.Ex. 9).

**3.** There is evidence of additional liabilities at the time of the transfer. The foreclosure judgment on 69 Marlboro Street of December 1973 names Sessions Service Center, Inc. as a defendant; this indicates that that company had some claim against the property. The notice of *lis pendens* for Owners Equity Corporation in-

default against Apollo Electric and Clarence Edwards. (Pl.Ex. 10).

At the time of the Clintonville Road transfer, neither Clarence Edwards nor Apollo Electric were current in the payment of their federal tax liabilities. During the last three quarters of 1972 and the first quarter of 1973, Apollo Electric was responsible for $3,756.47 in income and social security taxes withheld from the salaries of its employees. As sole shareholder and president, Clarence Edwards was the person legally responsible for collecting, accounting for and paying the withholding taxes for Apollo Electric. At that time, no penalties had yet been assessed. (Pl.Ex. 13). Mr. Edwards' personal tax liability arose from his 1971 personal income tax return in which he had insufficiently documented certain claimed losses. (Pl.Ex. 14). The IRS had attempted to notify Mr. Edwards of an audit of his 1971 return on November 27, 1972 by mailing a letter to his former address. When Mr. Edwards failed to appear at the scheduled audit, the IRS inquired as to his whereabouts through Apollo Electric on December 28, 1972. Mr. Edwards responded and on February 13, 1973 a new audit conference was scheduled. The audit conference was not held until September 12, 1973, over four months after the transfer of the Clintonville Road property. The IRS mailed a notice of a tax deficiency of $925.74 to Mr. Edwards on December 10, 1973 and formally assessed the taxes on May 20, 1974.[4]

After the transfer, Apollo Electric continued to be delinquent in the payment of its withholding and social security taxes. On February 28, 1974, the IRS assessed a penalty of $5,681.10 against Clarence Edwards as the responsible person for Apollo Electric under 26 U.S.C. § 6672. A series of penalties followed: $1,914.38 on June 3, 1974; $7,020.60 on August 30, 1976; $3,078.61 on May 9, 1977; and $1,204.48 on June 16, 1978. (Pl.Ex. 12 & 13). By the end of June 1978 the penalties assessed under 26 U.S.C. § 6672 against Clarence Edwards totaled $16,911.19 [5] for Apollo Electric's delinquent payment of withheld income and social security taxes from the second quarter of 1972 to the third quarter of 1977. (Pl.Ex. 12 & 13).

Clarence and Yvonne Edwards continued to reside at the Clintonville Road property and to make mortgage payments thereon. During 1973, 1974, 1975 and 1976, Yvonne Edwards was not employed. (Pl.Ex. 16–19). In October 1975, Tilo Company, Inc. filed a mechanic's lien in the amount of $2,300 for work done on the Clintonville Road property. (Pl.Ex. 35). The contract giving rise to the lien had been signed by both Clarence and Yvonne Edwards. In the same month,

---

dicates that Atlantic Electric Supply Company, Inc. and Merriam, Virshup & Caplan had established some claims against the property at 777 Dixwell Avenue. (Pl.Ex. 38). The IRS, however, has failed to present any evidence on the existence, validity, or amount of these claims. Consequently, the court is unable directly to include the amounts of these claims in its determination of the nature of the Clintonville Road property transfer.

Clarence Edwards indicated that he was delinquent in paying his child support at the time of the transfer. He was to pay $15 per week for support of each of his two minor children from his former marriage to Lillian Edwards. Except for an estimate of $200 in the defendant's sworn statement of financial condition dated October 16, 1973 (Pl.Ex. 25), there is no indication of the amount of the arrearage. A delinquency in October is no indication of the amount of a delinquency the preceding April. Again, because the IRS failed to produce evidence on the amount of the child support liability, I cannot directly consider the amount of this liability in my evaluation of Edwards' financial condition on the transfer date.

4. On May 20, 1974 the IRS assessed interest of $116.48 on the unpaid 1971 taxes. (Pl.Ex. 12). On March 17, 1975 Clarence Edwards paid $360 toward the assessment. The amount currently outstanding is $682.22 plus statutory costs ($925.74 + $116.48 − $360 = $682.22). It should be noted that the IRS in its complaint alleged that Mr. Edwards' deficiency for 1971 totaled $682.52. Actually, Mr. Edwards owed $682.22 according to official tax records. (Pl.Ex. 12 & 13). Since Mr. Edwards did not contest the IRS' determination of tax liability in its complaint, and noting the minimal sum involved ($.30), I will accept the deficiency determination in the complaint.

5. This amount includes an abatement of $1,987.98, which was credited to Clarence Edwards' account on February 28, 1974. (Pl.Ex. 13).

a two family dwelling at 102–04 Lombard Street, New Haven, Connecticut (Lombard Street property) was purchased in the name of Yvonne Edwards. The purchase price of $20,500 consisted of a $2,500 cash payment and a mortgage for $18,000. (Pl.Ex. 39). The mortgage, to National Savings Bank of New Haven, Connecticut, was signed by both Yvonne and Clarence Edwards. After the purchase, Clarence Edwards enclosed the property's three car garage to house the offices of Apollo Electric. The company maintained its offices there, but no rent was ever paid to Yvonne Edwards for the use of the property. Yvonne Edwards rented the remainder of the property to third parties.

Clarence and Yvonne Edwards jointly executed two more mortgages. The first mortgage, executed on January 26, 1976, was to Philip Trachten for $6,500 and covered both the Lombard Street and Clintonville Road properties. (Pl.Ex. 4). The second, executed on November 16, 1977, was to Arthur Lewis in the amount of $2,200 and covered the Clintonville Road property. (Pl.Ex. 5). Two years later, on July 10, 1979, Clarence Edwards filed notice of *lis pendens* against both the Clintonville Road and the Lombard Street properties because of a divorce action against him by Yvonne Edwards. (Pl.Ex. 6 & 7). The Edwardses also filed separate tax returns for the 1979 tax year. Clarence claimed the loss on the Lombard Street property on his return for that year; the tax return of Yvonne Edwards merely declared her earnings from Apollo Electric. (Pl.Ex. 22 & 23).

For the tax years 1975, 1976 and 1977, Clarence and Yvonne Edwards filed joint income tax returns. (Pl.Ex. 18–20). The IRS determined deficiencies in personal taxes paid for those years totaling $2,658.77. (Pl.Ex. 13). Because of these deficiencies, the deficiencies in Clarence Edwards' personal taxes for 1971 and the section 6672 penalties, the IRS filed a series of lien notices against Clarence and Yvonne Edwards with the North Haven Town Clerk. It is these liens that the IRS now seeks to have declared valid and foreclosed against the defendants.

## TESTIMONY AT TRIAL

Both defendants testified at the bench trial on August 15, 1983, as did revenue agent Michael F. Guarnieri for the IRS. Clarence Edwards testified that he had only a third grade education and was basically illiterate. He then explained the circumstances surrounding the transfer of the Clintonville Road property to Yvonne Edwards. His wife, he recounted, had supplied the down payment of $8,500 for the property. This amount, he explained, had been part of a gift from her now-deceased father. Mr. Edwards described their visit to the father's home in Alabama and the father's presentation of a cash gift to his daughter Yvonne. One of the conditions of the gift was that the money be used to purchase a home in Yvonne Edwards' name. The money was not deposited in a bank, Mr. Edwards explained, but was personally returned to Connecticut by Yvonne, who entrusted the money to her sister in New Haven. Mr. Edwards then described Yvonne's unsuccessful attempts to procure a mortgage. He explained that because he had credit, he agreed to take out a mortgage and acquire title to the property in his own name with the understanding that he would later transfer it to Yvonne. When asked why he had transferred the property to Yvonne in April 1973, Clarence Edwards responded: "Because it was hers."

Mr. Edwards also testified on the financial arrangements of his family and business. He stated that he was uncertain about how Yvonne Edwards made the mortgage payments on the Clintonville Road property, but that he did give her his salary from Apollo Electric, which she deposited in an account used to pay household expenses. As to the use of the Lombard Street garage by Apollo Electric, Mr. Edwards testified that he was unaware of any rent having been paid to Yvonne Edwards on behalf of Apollo Electric. His name, he explained, had appeared on the subsequent mortgages for the Clintonville Road and Lombard Street properties because the mortgagees had required both his and Yvonne's signatures.

Yvonne Edwards' testimony substantiated that of Clarence Edwards. She also described their trip to Alabama to receive the money for the down payment on a home. She testified that the money was given to her on condition that the property would be bought in her name. Her father, she explained, had made similar gifts to all of her brothers and sisters. She stated that she had entrusted the money to her sister in New Haven until the time of the closing. After she and Clarence Edwards had located a suitable property, she noted, she had been unable to procure financing because of her age (21), her recent arrival in Connecticut (1969) and her low wages ($3,403 per annum). She then testified that Mr. Edwards had secured financing and had taken the property in his name with the understanding that it would be transferred to Yvonne after the marriage. Yvonne Edwards also confirmed that Clarence Edwards entrusted his salary to her and that she used those funds to pay household expenses. She added that at least part of the mortgage payments came from her savings and that the down payment for the Lombard Street property had come from her savings and from her share of her father's estate.

The IRS called revenue agent Michael Guarnieri as a rebuttal witness. During his investigation of the case, Guarnieri had interviewed both Clarence and Yvonne Edwards. Guarnieri testified that they both informed him at the interviews that Yvonne Edwards had used the salary of Clarence Edwards to meet household expenses, including mortgage payments. Guarnieri reported that at one time Clarence Edwards informed him that the Clintonville Road property had been transferred to his wife to protect it from his creditors. Yet, Guarnieri also testified that both Clarence and Yvonne Edwards stated that the down payment on the house was the result of a gift from Yvonne's father. Guarnieri admitted that both defendants had agreed that Clarence had purchased the Clintonville Road property in his name because only he had enough credit to secure financing. Guarnieri noted that he had requested documentation for the gift from Yvonne's father, but that none had ever been supplied.

After the completion of the testimony, I requested that both parties submit proposed findings of fact and conclusions of law for my consideration in evaluating the claims of the IRS.

## CONCLUSIONS OF LAW

Clarence and Yvonne Edwards have conceded a joint tax liability in the amount of $2,658.77 for the years 1975, 1976 and 1977. Clarence Edwards has also conceded his personal tax liability in the amount of $682.52 for the year 1971 and his liability under 26 U.S.C. § 6672 for $16,911.19 in outstanding withholding and social security taxes for the second quarter of 1972 through the third quarter of 1977 as the responsible person for Apollo Electric Company, Inc. Because of these concessions, I need only consider whether the April 1973 transfer of the Clintonville Road property from Clarence Edwards to Yvonne Edwards was a fraudulent conveyance and should be set aside.

■ To determine whether the conveyance was indeed fraudulent and void as to the plaintiff IRS, I will apply Connecticut law. *See Reconstruction Finance Corp. v. United Distillers Supply Corp.*, 229 F.2d 665, 667 (2d Cir.1956). In Connecticut, the remedy for a creditor in the event of a debtor's fraudulent conveyance is provided by section 52–552 of the Connecticut General Statutes, which states:

All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs.

There is no question that the IRS was a creditor for the purposes of the statute at the time of the April 1973 transfer. Personal income taxes, although assessed at a later date, are due on the date that the

**1534**

return is required to be filed. *Pan American Van Lines v. United States,* 607 F.2d 1299, 1301 (9th Cir.1979); *United States v. Adams Building Co., Inc.,* 531 F.2d 342, 343 n. 2 (6th Cir.1976). Clarence Edwards' personal taxes for 1971, therefore, were due on the statutory filing date, April 15, 1972, even though the deficiency was not assessed until May 20, 1974. The IRS was a creditor of Clarence Edwards in the amount of $925.74 on the transfer date in April 1973.

■ Clarence Edwards has additional obligations to the United States under 26 U.S.C. § 6672. Apollo Electric had withheld income and social security taxes from its employees' salaries. As the president and sole shareholder of Apollo Electric, Mr. Edwards was responsible for withholding the social security and income taxes from employee salaries. The Internal Revenue Code recognizes this responsibility by imposing a penalty equal to the taxes withheld under 26 U.S.C. § 6672 against the responsible person in a company if the company does not pay over the withholding taxes to the government. The company's liability for withholding taxes arises at the moment the taxes are withheld from employee salaries; a contingent liability is immediately created for the amount withheld. *Kalb v. United States,* 505 F.2d 506, 509 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). The person responsible for paying the company's withholding taxes is also contingently liable from that moment. *In re Serignese,* 214 F.Supp. 917 (D.Conn.1963), *aff'd per curiam sub nom. Goring v. United States,* 330 F.2d 960 (2d Cir.1964). On the date that he transferred the property, Clarence Edwards was contingently liable for all of the withholding taxes that Apollo Electric had not paid. At that time, Apollo Electric owed $3,756.47 in withholding taxes for the final three quarters of 1972 and the first quarter of 1973. Clarence Edwards, thus, was indebted to the United States in the amount of $4,782.21, consisting of $925.74 in personal taxes and $3,756.47 in section 6672 penalties, when he transferred the Clintonville Road property to Yvonne Edwards.

■ Because the IRS was a creditor at the time of the transfer, it can claim relief under section 52–552. To have the transfer declared void, however, the IRS must prove that the property was fraudulently conveyed. For the purposes of the statute, "[a] conveyance is fraudulent if made with actual intent to avoid any debt or duty or if made without substantial consideration by a person who is or will be thereby rendered insolvent." *Molitor v. Molitor,* 184 Conn. 530, 440 A.2d 215, 218 (1981). *See Town Bank & Trust Co. v. Benson,* 176 Conn. 304, 307, 407 A.2d 971 (1978); *Genovese Coal and Mason's Material Co. v. River Bend Builders, Inc.,* 146 Conn. 48, 51–52, 147 A.2d 193 (1958). Fraudulent intent must be shared by the grantor and the grantee. *Town Bank & Trust Co. v. Benson,* 176 Conn. at 307, 407 A.2d 971. Even though the conveyance is intra-family, the burden of proof on the elements of fraud remains on the creditor attempting to void the transfer. *Id.*

Therefore, the IRS must prove that either (a) Clarence Edwards transferred the Clintonville Road property to Yvonne Edwards for insubstantial consideration when he was insolvent or that he was rendered insolvent by the transfer, or (b) both Yvonne Edwards and Clarence Edwards intended to defraud Clarence Edwards' creditors by making the transfer.

A. *Insolvency*

■ The sufficiency of the consideration is not in issue; Yvonne Edwards did not give anything of value at the time of the transfer of the Clintonville Road property. Insufficient consideration is not enough to establish fraudulent intent. The IRS must still prove that Clarence Edwards was insolvent at the time of the transfer or was rendered insolvent thereby. Although the IRS has produced considerable evidence on the issue, it has not met its burden of showing, by a preponderance of the evidence, that Clarence Edwards was indeed insolvent in April 1973.

■ A person is insolvent for the purpose of determining the existence of a fraudulent conveyance if he is unable to pay his debts existing at the time of the transfer.

*Molitor v. Molitor,* 184 Conn. 530, 440 A.2d 215, 218 (1981); *Town Bank & Trust Co., v. Benson,* 176 Conn. 304, 307, 407 A.2d 971 (1978); *Boiselle v. Rogoff,* 126 Conn. 635, 643, 13 A.2d 753 (1940); *Dombron v. Rogozinski,* 120 Conn. 245, 247, 180 A. 453 (1935).

■ A person transferring property is solvent if the transferor "has ample means remaining to discharge all his obligations and the means are readily and conveniently accessible to creditors." *Graves v. Atwood,* 52 Conn. 512, 517 (1885) (quoting Bump, Fraudulent Conveyances 283). The proper procedure for determining solvency is to balance assets against liabilities. *See State v. Martin,* 77 Conn. 142, 144, 58 A. 745 (1904). As long as Clarence Edwards retained sufficient property to discharge his debts without recourse to the Clintonville Road property he would be solvent and the conveyance would not be fraudulent.

■ The IRS has produced evidence of over $9,000 in debts owed by Clarence Edwards at the time of the property transfer. Clarence Edwards owed the United States $4,782.21 in unpaid taxes and penalties and was subject to the judgment for Grabbel-Lyons Distributors Inc. of $5,124.95. Edwards' assets, however, consisting of his equity in the Marlboro Street property and the Clintonville Road property, exceeded $16,000. Edwards' equity interest as co-owner of the Marlboro Street property was approximately $7,450 (the estimated value of $40,000 minus the mortgages for $14,800 and $10,300, the remainder divided by two). Clarence Edwards also retained equity of $8,738 in the Dixwell Avenue property (the $26,000 estimated value of the property minus the mortgages of $12,605 and $4,657). At the time of the transfer, it appears that Mr. Edwards' assets exceeded his liabilities proven by the IRS by over $6,000.

In addition, Clarence Edwards earned $4,600 in 1972 and $4,000 in 1973. (Pl.Ex. 15 & 16). Even without the equity of $8,500 in the Clintonville Road property, Clarence Edwards' assets exceeded his proven liabilities. Therefore, I am unable to find that Clarence Edwards was either insolvent at the time of the transfer or that he was rendered insolvent by the transfer of the Clintonville Road property.

### B. Fraudulent Intent

■ Although the IRS failed to prove Clarence Edwards' insolvency, there remains the question of whether Clarence and Yvonne Edwards made the transfer with the intent of avoiding Mr. Edwards' debts. It is possible to infer fraud from the circumstances of the transfer. *Daly Brothers, Inc. v. Spallone,* 114 Conn. 236, 242–43, 158 A. 237 (1932). Indirect evidence of fraud may consist of the conduct and action of the defendants with respect to the possession, management and control of the premises after the date of the conveyance. *Id.* Fraud, however, will never be presumed, but must be affirmatively established by the plaintiff. *Id.*

The IRS' evidence of the events at the time of the transfer is scant and is contradicted by the credible testimony of the defendants. Both of the defendants testified that the Clintonville Road property was transferred to effectuate an agreement among Clarence Edwards, Yvonne Edwards, and Yvonne Edwards' father that the father would provide his daughter with the down payment for a home if the title of the property was taken in the name of Yvonne Edwards. The defendants' explanation that the title and the mortgage were originally in Clarence Edwards' name because Yvonne Edwards was unable to secure financing is plausible. I believe their testimony. The testimony of IRS agent Michael Guarnieri does not refute the defendants' explanation. Clarence Edwards' statement to agent Guarnieri that the transfer had been made to preserve the property from the defendant's creditors is not inconsistent with the story of the father's gift. The father's requirement that the property be in his daughter's name could reasonably have been based on his desire that his daughter control the property so that the husband's creditors could in no way affect her ownership rights.

The IRS offered no other direct evidence to refute the defendants' story. It did not

call Mrs. Edwards' sister, who had held the down payment money, to substantiate the story, neither did it produce any testimonial or documentary evidence to prove an alternative source for the funds used for the down payment on the Clintonville Road property. The IRS also did not prove that Yvonne Edwards had any knowledge of Clarence Edwards' financial condition at the time of the property transfer.

The IRS relies on the events subsequent to the transfer to show that, because the defendants acted as if Clarence Edwards had a continuing interest in the Clintonville Road property, the original transfer was a mere sham. I find that the evidence presented is not persuasive on this point. Clarence Edwards did continue to reside at the Clintonville Road property, but I see nothing unusual in a husband/father wanting to live with his family. The fact that Clarence Edwards helped with the repairs to and maintenance of the property indicates nothing more than a desire to provide his family with a comfortable and safe home. The fact that Clarence Edwards signed a contract for repairs on the Clintonville Road property or mortgages on the Clintonville Road and Lombard Street properties does not necessarily indicate that he believed that he still had an interest in those properties. At the time of the above agreements, Yvonne Edwards was without employment and had no independent income. It is not unusual for a lender or contractor to require the signature of a spouse with a steady source of income and a credit rating before furnishing money, goods or services. Clarence Edwards' filing of notice of *lis pendens* on the Clintonville Road and Lombard Street properties in the face of a pending divorce action by his wife does not prove that he believed that he retained an ownership interest in the property. The purpose of a *lis pendens* is to prevent the disposition of property while an action affecting rights to the property is pending. *Kukanskis v. Griffith,* 180 Conn. 501, 507, 430 A.2d 21 (1980). Preventing the record owner from disposing of a property while a divorce action is pending may enhance the chances of a fair property settlement.

The IRS also contends that the purchase of the Lombard Street property shows that there was a continuing fraudulent course in the financial dealings of the Edwardses. This contention is further strengthened, the IRS maintains, by the fact that Apollo Electric used the Lombard Street property rent free. Yvonne Edwards testified that because the down payment for the Lombard Street property had come from her savings and from her share of her late father's estate, the title of the property was taken in her name. Her testimony on this purchase is uncontradicted and credible. Apollo Electric's failure to pay rent does not prove fraud. The lack of rental payments can be explained in part by the fact that Clarence Edwards had made alterations to the garage without charge to Yvonne Edwards and had by his own testimony helped repair and maintain the property.[6]

Both defendants admit that the salary of Clarence Edwards may have been used to meet the mortgage payments on the Clintonville Road property. Clarence Edwards entrusted his salary from Apollo Electric to his wife, who deposited it in an account from which she paid household expenses. Clarence Edwards' attempts to feed, clothe and shelter his family do not indicate to me a continuing pattern of fraudulent conduct or that the defendants believed that Clarence Edwards had some ownership interest in the Clintonville Road property. The Connecticut courts to my knowledge have never considered a husband's contributing to the mortgage payments on his wife's property to be proof of a prior fraudulent conveyance of that property from the husband to the wife. To the contrary, Connecticut places an obligation on a spouse and parent to support his fami-

---

**6.** Although the IRS did not place much importance on the fact that Clarence Edwards claimed the losses from the Lombard Street property on his individual tax return for 1979, I find the defendant's behavior disturbing. This irregularity, however, while indicating that the 1979 declarations of income may be fraudulent, is not enough to substantiate a continuing course of fraud reaching back to the 1973 transfer of the Clintonville Road property.

ly; there is both a common law and statutory duty to do so. *Fitzmaurice v. Buck,* 77 Conn. 390, 59 A. 415 (1904); Conn.Gen.Stat. § 46b–37 (1983). The support obligation continues even if the wife owns property of her own. *Pezas v. Pezas,* 151 Conn. 611, 616, 201 A.2d 192 (1964). The parent's and spouse's duty to support his family extends to the provision of necessities, that is, suitable clothing, lodging, food and medical attendance. *Darling v. United States,* 375 F.2d 843, 848, 179 Ct.Cl. 891 (1967) (per curiam); *State v. Kelly,* 100 Conn. 727, 730, 125 A. 95 (1924). Connecticut law places the duty of support above all other debts; an execution of wages for support obligations takes precedence over an execution of wages for any other debt. Conn.Gen.Stat. § 52–362 (1983). I do not believe that a Connecticut court would conclude that the contribution of Clarence Edwards' salary, ranging from $4,000 in 1973 to $10,000 in 1977, to the maintenance of the household is more consistent with an intent to defraud his creditors than with an intent to fulfill his duty to support his family.

After considering all of the evidence of the Edwardses' conduct prior and subsequent to the transfer of the Clintonville Road property, I find the evidence insufficient to satisfy the IRS' burden of proving that Clarence and Yvonne Edwards intended to defraud Mr. Edwards' creditors by transferring ownership of the Clintonville Road property. Because I have also found that Clarence Edwards was solvent at the time of the transfer and was not rendered insolvent by the transfer, I must also conclude that the conveyance of the Clintonville Road property from Clarence Edwards to Yvonne Edwards was not fraudulent as to the plaintiff, the United States.

These are my findings of fact and conclusions of law. I therefore order that judgment be entered for the United States on counts one and two. Clarence Edwards is adjudged liable for the amount of $682.52 plus statutory additions for personal taxes for the year 1971 and $16,911.19 plus statutory costs as the responsible person of Apollo Electric Company, Inc. under 26 U.S.C. § 6672. Clarence Edwards and Yvonne Edwards are adjudged jointly and severally liable for $2,658.77 plus statutory costs for personal income taxes for the years 1975, 1976 and 1977.

Judgment is entered for defendants on the third count of the complaint, except for that portion of the count that requests a determination that the tax liens against Yvonne Edwards' interest in 45 Clintonville Road, North Haven, Connecticut, are valid. As to that portion of Count III, judgment shall enter for the plaintiff.

It is hereby ordered that the liens against Yvonne Edwards' interest in 45 Clintonville Road, North Haven, Connecticut be foreclosed and that said property be sold by the United States Marshal pursuant to 28 U.S.C. § 2001 *et seq.* (1976), to satisfy the tax liabilities of Yvonne Edwards in the amount of $2,658.77 plus statutory costs on and subject to the following conditions.

1. The sale shall be conducted on the first Saturday after the sixtieth day following the entry of this judgment, unless prior to that date defendant Yvonne Edwards pays to the plaintiff the amount of the judgment, plus statutory costs and interest and the expenses, if any, of advertising the sale and appraising the property. The United States Marshal shall promptly notify the court in the event of such redemption.

2. The sale shall be conducted by a public auction on the premises at a reasonable time on the date specified.

3. The sale shall be advertised in the New Haven Sunday Register at least twice, once on the Sunday two weeks preceding the sale date and once on the Sunday immediately preceding the sale date.

4. At least two weeks preceding the sale, a sign shall be placed upon the premises advertising the time, date and conditions of such sale.

5. Before the sale date, three qualified appraisers shall submit to the court, under oath, their opinions as to the fair market value of the property to be sold. One appraisal shall be made by an appraiser named by the plaintiff, the second appraisal

shall be made by an appraiser named by the defendant, and the third appraisal shall be made by an appraiser jointly selected by plaintiff's appraiser and defendant's appraiser.

6. The sale shall be subject to the approval and the ratification of this Court and a motion for the approval of the sale shall be filed with this Court within fourteen days following the sale.

7. The expenses of the sale and the appraisal shall be taxed with the costs of this case and a detailed accounting of the expenses shall be submitted to this Court for approval within fourteen days following the sale date.

To allow the defendant the opportunity to satisfy her liabilities before additional costs are accrued, the clerk shall enter this judgment twenty days after it is received by the clerk's office. The clerk will immediately notify the parties of this order and the date upon which the judgment will be entered.

It is so ordered.