**CITIZENS BANK OF CLEARWATER, Appellant,**

**v.**

**Warren W. HUNT, Edward E. Hunt, and Sylvia C. Hunt, Defendants,**

**Edward E. Hunt and Sylvia C. Hunt, Appellees.**

**No. 915, Docket 90–7817.**

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1991.

Decided March 11, 1991.

Sylvia M. Ho, Hartford, Conn. (Thomas F. Parker, and Sorokin, Sorokin, Gross, Hyde & Williams, Hartford, Conn., on the brief) for appellant Citizens Bank of Clearwater.

Houston P. Lowry, Farmington, Conn. (Tarlow, Levy & Droney, Farmington, Conn., on the brief) for appellees Edward E. Hunt and Sylvia C. Hunt.

Before TIMBERS, MESKILL and CARDAMONE, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Citizens Bank of Clearwater (Citizens) appeals from a summary judgment entered September 5, 1990, in the District of Connecticut, Alan H. Nevas, *District Judge*, in favor of appellees Edward E. Hunt and Sylvia C. Hunt (collectively, the Hunts) in an action commenced by Citizens seeking to have the conveyance of certain real property to the Hunts set aside as fraudulent.

On September 22, 1989, Citizens commenced this action seeking to collect on a promissory note that Warren W. Hunt had guaranteed. Approximately three months prior to the commencement of the action, Warren Hunt had conveyed his residence to his parents, Edward E. Hunt and Sylvia C. Hunt. The proceeds of that conveyance ultimately were remitted to Edward Hunt. Citizens' complaint included a count seeking to have the conveyance of the Hunt residence set aside as fraudulent. The district court granted the Hunts' motion for summary judgment on the fraudulent conveyance count and entered judgment dismissing that count.

On appeal, Citizens contends that (1) there was a genuine issue of material fact as to the intentions of the parties that precluded a grant of summary judgment on the fraudulent conveyance count; and (2) the district court applied an improper standard by placing the burden on Citizens to produce evidence that Warren Hunt was insolvent.

For the reasons that follow, we reverse the judgment of the district court and remand for trial on the issue of actual fraud only.

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

In November 1988, Systems Technology Corporation (Systems) executed a promissory note to Citizens in the amount of $250,000. Warren Hunt, the president of Systems, was allegedly a guarantor on that note. The note required Systems to make quarterly interest payments, and gave Citizens the right to demand payment of the outstanding principal at any time.

In June 1989, Warren Hunt and his wife, Kathleen Hunt, were having trouble satisfying their first mortgage payments on their residence at 42 Eastview Terrace in Tolland, Connecticut (the property). Warren Hunt turned to his parents, appellees Edward E. Hunt and Sylvia C. Hunt, for financial assistance. The Hunts were unwilling to provide that assistance unless they received an equity interest in the prop-

erty. Accordingly, Warren Hunt agreed to sell the property to his parents.

On June 8, 1989, Anne Miller, a licensed Connecticut real estate broker, appraised the fair market value of the property at $190,000. Edward Hunt paid $150 for the appraisal. Soon thereafter, appellees signed a contract to purchase the property for $179,250. Since Warren Hunt did not require a real estate broker to locate a buyer, the sale price reflected the fair market value minus six percent, the usual broker's commission in Connecticut.

The closing took place on June 16, 1989 at the office of the Hunts' attorney, Paul G. Skripol. After settlement adjustments were made, the final purchase price was agreed upon at $180,000.06. Edward Hunt delivered to Skripol two bank checks totalling $180,000, and six cents in cash. Warren and Kathleen Hunt delivered to the Hunts a deed to the property. Skripol issued a certificate of title to the property in the names of the Hunts. In addition, Skripol prepared a report for the Internal Revenue Service stating that Warren and Kathleen Hunt received the gross sum of $179,250 as a result of the sale of the property. He also delivered a check in the amount of $114,219.48 payable to Warren and Kathleen Hunt. That amount represented the sale proceeds after subtracting the first mortgage, which was paid in full, and other settlement costs.

Warren and Kathleen Hunt never deposited that check. Instead, they endorsed it and turned it over to Edward Hunt, who invested it in a certificate of deposit payable to himself and Kathleen Hunt. When the certificate of deposit matured, Edward Hunt obtained control of the proceeds. Warren and Kathleen Hunt continued to reside at the property after the sale. They do not pay rent to the Hunts, but are responsible for the costs of maintaining the property. Warren and Edward Hunt both testified, at their depositions, that Warren was indebted to Edward in an amount exceeding $114,219.48 at the time of the closing. This indebtedness was due to financial assistance that Edward had provided to Warren in the past. Warren Hunt also testified that he was not insolvent at the time of the conveyance, but became insolvent in September 1989.

In September 1989, Systems defaulted on the quarterly interest payment on the Citizens note. Accordingly, Citizens demanded payment of the principal of the promissory note. When Systems was not able to satisfy the demand, Citizens sought satisfaction from Warren Hunt, a guarantor. He also was unable to satisfy the demand.

Subsequently, on September 22, 1989, Citizens commenced the instant action against Warren Hunt, Edward Hunt, and Sylvia Hunt, seeking to collect the unpaid balance of the promissory note. Count three of the complaint, the only count involved on the instant appeal, alleges that the transfer of the property was a fraudulent conveyance. Citizens seeks to have the property reconveyed to Warren Hunt so that it may be available to satisfy his debt to Citizens. At the time of the commencement of the instant action, Citizens obtained a prejudgment order authorizing attachment of Warren Hunt's interest in the property.

On November 9, 1989, the Hunts moved for summary judgment on the fraudulent conveyance claim. On December 26, 1989, Citizens filed a memorandum of law in opposition to the Hunts' motion for summary judgment. That memorandum did not include a statement of facts in dispute as required by Local Rule 9(c)(2). Such a statement was not filed by Citizens until January 30, 1990, when it filed its responsive papers. On December 29, 1989, the Hunts' motion for summary judgment was referred to a magistrate.

On February 12, 1990, the magistrate recommended to the district court that the Hunts' motion be granted. He concluded that Citizens had failed to produce evidence that Warren Hunt had any creditors that the Hunts could have intended to defraud, and that Citizens had failed to produce evidence regarding Warren Hunt's insolvency. Citizens filed objections to the magistrate's recommendation on February 23. Citizens also filed motions in the district court for leave to engage in further

discovery, for leave to amend its statement of facts in dispute required by Local Rule 9(c)(2), and for consideration of additional evidence. On March 19, the district court denied the pending motions and adopted the magistrate's recommendation.

On June 9, the Hunts filed a motion to void the prejudgment attachment that Citizens had obtained. On June 11, the Hunts moved for final judgment on count three. The district court granted both motions on September 4, and entered final judgment dismissing count three on September 5. The district court on September 25 stayed enforcement of the judgment pending appeal.

This appeal followed.

## II.

Initially, we set forth our standard of review. We review *de novo* the district court's determination to grant summary judgment. *EAD Metallurgical, Inc. v. Aetna Casualty & Sur. Co.*, 905 F.2d 8, 10 (2 Cir.1990); *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2 Cir.1990), *petition for cert. filed*, 59 U.S.L.W. 3168 (U.S. Sep. 4, 1990). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In reviewing that determination, the facts and the inferences to be drawn from them are considered in the light most favorable to the non-moving party. *EAD Metallurgical, supra*, 905 F.2d at 10; *Delaware & Hudson Ry., supra*, 902 F.2d at 177. The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-movant then bears the burden of establishing the existence of elements es-

sential to its case, which it would have to prove at trial. *Id.* at 322; *Delaware & Hudson Ry., supra*, 902 F.2d at 177; Fed. R.Civ.P. 56(e). If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Matsushita Elec., supra*, 475 U.S. at 587.

## III.

With the foregoing in mind, we turn to appellant's contention that summary judgment was inappropriate since there are genuine issues of material fact to be resolved at trial. We agree that summary judgment was inappropriate as to Citizens' claim of actual fraud and we remand for trial on that issue only.

A fraudulent conveyance claim is governed by the law of the state in which the property is located. *Reconstruction Fin. Corp. v. United Distillers Prods. Corp.*, 229 F.2d 665, 667 (2 Cir.1956); *United States v. Edwards*, 572 F.Supp. 1527, 1533 (D.Conn.1983). Accordingly, Connecticut law determines whether the conveyance here involved was fraudulent.

Under Connecticut law,

"All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

Conn.Gen.Stat.Ann. § 52–552 (West 1960). Under this statute, "[a] conveyance is fraudulent if made with actual intent to avoid any debt or duty [ (actual fraud) ] or if made without any substantial consideration by a person who is or will be thereby rendered insolvent [ (constructive fraud) ]." *Molitor v. Molitor*, 184 Conn. 530, 536 (1981); *accord Denison Dev. Co. v. Gunther*, 189 Conn. 333, 335 (1983); *Town Bank & Trust Co. v. Benson*, 176 Conn. 304, 307 (1978).

**(A)**

We consider first the evidence that pertains to actual fraud. We hold that a determination as to whether the property was transferred with actual intent to hinder Warren Hunt's creditors involves issues of intent and credibility that were inappropriate for summary judgment and that should be resolved by the fact finder after a trial.

To succeed on this claim at trial, Citizens would have to demonstrate that both parties to the transaction had fraudulent intent. *Gunther, supra,* 189 Conn. at 335; *Benson, supra,* 176 Conn. at 307. The intent of the parties to the transaction "is purely a question of fact." *Tyers v. Coma,* 214 Conn. 8, 11 (1990); *Zapolsky v. Sacks,* 191 Conn. 194, 200 (1983); *accord Benson, supra,* 176 Conn. at 308–09. Ordinarily, such issues are inappropriate for summary judgment. *Clements v. County of Nassau,* 835 F.2d 1000, 1005 (2 Cir.1987); *Meiri v. Dacon,* 759 F.2d 989, 998 (2 Cir.), *cert. denied,* 474 U.S. 829 (1985); *Benson, supra,* 176 Conn. at 309. However, "the mere incantation of intent or state of mind [does not] operate as a talisman to defeat an otherwise valid [summary judgment] motion." *Meiri, supra,* 759 F.2d at 998. Rather, "[t]he state of mind exception ... is appropriate only where solid circumstantial evidence exists to prove plaintiff's case." *Clements, supra,* 835 F.2d at 1005.

Since the question of actual fraud involves the parties' states of mind, it is "not ordinarily proven by direct evidence, but rather, by inference from other facts proven—the indicia or badges of fraud." *Zapolsky, supra,* 191 Conn. at 200; *see also Benson, supra,* 176 Conn. at 309 (actual fraud "must often be inferred from surrounding circumstances"). That evidence may include "the circumstances of the transfer ... [and] the conduct and action of the defendants with respect to the possession, management and control of the premises after the date of the conveyance." *Edwards, supra,* 572 F.Supp. at 1535 (citations omitted).

We consider now the circumstantial evidence from which a fact finder could infer fraudulent intent. The Hunts argue that the evidence demonstrates that they paid fair market value for the property since the sale price was based on an independent appraisal. The fact of an intrafamily conveyance itself does not raise a presumption of fraudulent intent. *Edwards, supra,* 572 F.Supp. at 1534; *In re Bahre,* 23 B.R. 460, 462 (Bankr.D.Conn. 1982); *Tyers, supra,* 214 Conn. at 11.

In the instant case, the circumstances surrounding the transaction raise a genuine issue of material fact as to whether fair market value was paid for the property. The evidence indicated that, after the transfer was consummated, Warren Hunt returned all the proceeds from the sale of the property to his father, the purchaser of the property. Moreover, the transfer was made at a time when Warren Hunt was having problems making first mortgage payments on the property and approximately three months before he became insolvent. Furthermore, Warren and Kathleen Hunt continue to reside at the property here involved rent free.

The explanation for the circumstances surrounding this transaction rests in the deposition testimony of Warren and Edward Hunt. Both testified that the proceeds of the sale were returned to Edward Hunt in exchange for a pre-existing debt. The Hunts rely on *Tyers, supra,* for the proposition that the transfer of equity in a residence in partial satisfaction of a pre-existing debt does not constitute a fraudulent conveyance. *Id.* at 12. That reliance is misplaced.

*Tyers* involved a loan transaction between a husband and his wife. The husband sought and received permission to use $115,000, attributable to his wife's workers' compensation claim, toward the purchase of a restaurant. Use of the money was conditioned on its repayment. Seven months after the husband defaulted on a promissory note executed in connection with the purchase of the restaurant, his wife demanded repayment. In partial satisfaction of his pre-existing debt to his wife, the husband executed a quitclaim deed, transferring his interest in the mari-

tal residence to her. *Id.* at 9–10. The Connecticut Supreme Court affirmed the trial court's rejection of a claim by the holder of the note to have the conveyance set aside as fraudulent.

Most important, in *Tyers,* the fact finder had the benefit of a trial at which to judge the credibility of the parties and to credit their testimony regarding the nature and extent of the debt. In the instant case, by contrast, the only evidence of a specific pre-existing debt consists of the vague deposition testimony of Warren and Edward Hunt, who both testified that it existed. No documentary proof was offered as to the nature or extent of that debt. Neither Warren nor Edward Hunt was very specific about its origin, although at least part of it apparently was related to previous expenditures on the property. Nor was there specific testimony regarding whether the financial assistance rendered by Edward Hunt was considered a gift or a loan. Similarly, neither was specific about the amount of the debt, although both agreed that it was at least $114,219.48, the amount of the proceeds from the sale of the property. In short, that critical evidence is entirely dependent on the credibility of Warren Hunt and of Edward Hunt.

Edward Hunt also testified at his deposition that, with the exception of the first mortgage on the property, he was unaware of any debts owed by Warren. Since the first mortgage was paid in full, the Hunts argue that they did not have the requisite intent to defraud Warren's creditors. The issue of whether the Hunts knew about their son's debt to Citizens is also dependent on their credibility.

The circumstances surrounding the conveyance of the property and its aftermath raise a genuine issue of material fact as to whether the transfer of the property was made without consideration, for the sole purpose of keeping the property out of the reach of Warren Hunt's creditors. The resolution of that issue is entirely dependent on the credibility of Warren Hunt and of Edward Hunt. Although the Hunts' version of events may ultimately be borne out, there is sufficient circumstantial evidence to warrant presenting the issue of their intent to the fact finder.

We hold that summary judgment was improperly granted on the issue of actual fraud since there are genuine issues of material fact as to the parties' intentions with respect to the conveyance of the property.

### (B)

We turn next to Citizens' contention that the district court erred in granting summary judgment on the issue of constructive fraud. Specifically, Citizens contends that the district court applied an inappropriate standard by requiring it to establish that Warren Hunt was insolvent at the time of the transaction. Citizens contends that the Hunts, as the movants, were required to establish that Warren Hunt was solvent. We disagree. We hold that the district court applied the appropriate standard and properly granted summary judgment as to the issue of constructive fraud.

■ As stated earlier, to succeed at trial on its constructive fraud claim, Citizens would have to prove that Warren Hunt conveyed the property without receiving substantial consideration and that he was insolvent at the time of the transaction, or that the transaction rendered him insolvent. The fact that the proceeds of the sale were returned to Edward Hunt creates a genuine issue of material fact as to whether Warren Hunt received substantial consideration in connection with the transfer of the property.

■ The district court held that there was no genuine issue of material fact as to whether Warren Hunt was insolvent at the time of the transfer. "A person is insolvent for the purpose of determining the existence of a fraudulent conveyance if he is unable to pay his debts existing at the time of the transfer." *Edwards, supra,* 572 F.Supp. at 1534. Citizens alleged in its complaint that Warren Hunt was rendered unable to satisfy his debt to Citizens as a result of the transfer of his interest in his home to his parents. The only evidence, at the time the summary judgment motion

was decided, with respect to Warren Hunt's solvency was his deposition testimony that he was not insolvent at the time of the transfer, but became insolvent in September 1989. Citizens contends that, since appellees failed to demonstrate Warren Hunt's solvency, it was proper for it to rest on its pleadings. We do not agree.

A party moving for summary judgment is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp., supra,* 477 U.S. at 323 (emphasis in original). "Instead, . . . the burden on the moving party may be discharged by 'showing' —that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The Hunts' motion called into question the evidence with regard to all aspects of Citizens' fraudulent conveyance claim. Accordingly, Citizens could not rest on its pleadings to defeat the Hunts' motion. *Id.* at 324; *see also Donnelly v. Guion,* 467 F.2d 290, 293 (2 Cir.1972) ("[a] party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial"). Rather, to defeat the Hunts' summary judgment motion, Citizens was required to "make a showing sufficient to establish the existence of . . . element[s] essential to [its] case, and on which [it would] bear the burden of proof at trial." *Celotex Corp., supra,* 477 U.S. at 322; *see also Delaware & Hudson Ry., supra,* 902 F.2d at 177–78 ("[t]he non-movant . . . who must sustain the ultimate burden of proof, must demonstrate in opposing a summary judgment motion that there is some evidence which would create a genuine issue of material fact").

In contrast to issues such as intent, Warren Hunt's financial condition at the time of the sale was an issue capable of proof by direct evidence. Citizens did not submit any documentary evidence to demonstrate Warren Hunt's insolvency in opposition to the summary judgment motion. The only evidence from which insolvency could be inferred was the fact that Warren Hunt was having trouble making payments on his first mortgage. That evidence alone was insufficient to create a genuine issue of material fact as to whether Warren Hunt was insolvent at the time of the transfer.

We hold that summary judgment as to the issue of constructive fraud was properly granted.

## IV.

To summarize:

We hold that the district court erred in granting summary judgment as to the issue of actual fraud since resolution of that issue required a determination of the credibility of the parties. We hold that the grant of summary judgment on the issue of constructive fraud was appropriate since Citizens did not submit evidence to establish Warren Hunt's insolvency. Accordingly, we reverse and remand for trial on the issue of actual fraud only.

*Reversed and remanded.*