**UNITED STATES of America,
Plaintiff,**

v.

**PHILIP MORRIS INCORPORATED,
et al., Defendants.**

**No. CIV.A. 99–2496(GK).**

United States District Court,
District of Columbia.

Feb. 24, 2004.

See also, 219 F.R.D. 203.

Sharon Yvette Eubanks, Renee Brooker, Stephen Dudley Brody, J. Patrick Glynn, U.S. Dept. of Justice, Washington, DC, for U.S.

Judah Best, Kevin C. Lombardi, Steven Klugman, Bruce G. Merritt, Debevoise & Plimpton, Washington, DC, David Runtz, Dennis H. Hranitzky, Joseph P. Moodhe, Steven S. Michaels, Debevoise & Plimpton, LLP, New York, NY, for Council for Tobacco Research-USA, Inc.

Kate Cumming Beardsley, Buc & Beardsley, Washington, DC, for Elan Corp. PLC.

David B. Alden, Paul Crist, Randal S. Baringer, Robert C. Weber, Jones, Day, Reavis & Pogue, Cleveland, OH, William M. Bailey, John Buchanan Williams, Collier Shannon Scott, PLLC, Washington, DC, Scott C. Walker, Elizabeth P. Kessler, Jones, Day, Reavis & Pogue, Columbus, OH, Lisa M. Sheppard, Womble, Carlyle, Sandridge & Rice, PLLC, Winston-Salem, NC, Harold K. Gordon, Jones, Day, Reavis & Pogue, New York, NY, Jonathan Redgrave, Jones Day, Washington, DC, for R.J. Reynolds Tobacco Co.

Kenneth N. Bass, Jason Beckerman, Karen McCartan DeSantis, Dawn D. Marchant, David Patrick Sullivan, Kirkland & Ellis LLP, Washington, DC, David M. Bernick, Michelle H. Browdy, Deirdre A. Fox, Steven D. McCormick, Stephen R. Patton, Douglas G. Smith, Kirkland & Ellis, Chicago, IL, Leign Ann Dowden, Dan H. Willoughby, King & Spalding, Atlanta, GA, William Charles Hendricks, III, Andrew Martin McCormack, King & Spalding, Washington, DC, Paul Lamont McDonald, Philadelphia, PA, Rebecca I. Ruby, Goodwin Procter, LLP, Washington, DC, for Brown & Williamson Tobacco Corp.

Daniel R. Benson, Julie R. Fischer, Leonard A. Feiwus, Marc E. Kasowitz, Nancy E. Straub, Aaron H. Marks, Kasowitz, Benson, Torres Friedman, L.L.P., New York, NY, Michael P.A. Cohen, Washington Lawyers' Committee, Washington, DC, Warren Neil Eggleston, Howrey Simon,

Arnold & White, LLP, Washington, DC, Kenneth Anthony Gallo, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Washington, DC, Fred W. Reinke, Clifford Chance US, LLP, Washington, DC, Melodie M. Mabanta, Robinson Woolson, P.A., Baltimore, MD, for Liggett Group, Inc.

C. Ian Anderson, Davis, Polk & Wardwell, New York, NY, Steven M. Barna, Wachtell, Lipton, Rosen & Katz, New York, NY, Jeanna Maria Beck, Floyd E. Boone, Jr., Brian K. Esser, Murray R. Garnick, Michael R. Geske, Kevin M. Green, Peter Thomas Grossi, Jr., Ryan David Guilds, Nick Malhotra, Melissa L. Marglous, Duane J. Mauney, Amy L. McGinnis, Kendall Millard, Amy Elizabeth Ralph, Anne McBride Walker, Duane J. Mauney, Floyd E. Boone, Jr., James Miller Rosenthal, Jeanna Maria Beck, Jonathan Louis Stern, Kevin M. Green, Leslie Wharton, Nick Malhotra, Sharma Jnatel Simmons, Sharon L. Taylor, Susan Louise Lyndrup, Brian K. Esser, Stacy J. Pollock, Arnold & Porter, Washington, DC, Lauren J. Bernstein, Winston & Strawn, New York, NY, Timothy M. Broas, Thomas M. Stimson, Winston & Strawn LLP, Washington, DC, Bradley E. Lerman, Kevin J. Narko, Luke A. Palese, Jeffrey Wagner, Dan K. Webb, Ricardo E. Ugarte, Winston & Strawn, Chicago, IL, Richard H. Burton, Christy L. Henderson, Erik D. Nadolink, Cheryl Grissom Ragsdale, Michele B. Scarponi, Patricia M. Schwarzschild, Hunton & Williams, Richmond, VA, Alfred McDonnell, Arnold & Porter, Denver, CO, Ben M. Germana, Jeffrey M. Wintner, Steven M. Barna, Herbert M. Wachtell, Wachtell, Lipton, Rosen & Katz, New York, NY, Seth Barrett Tillman, U.S. District Court for the Middle District of Alabama, Montgomery, AL, for Philip Morris USA, Inc.

James Lewis Brochin, Theodore V. Wells, Jr., Paul, Weiss, Rifkind, Wharton

& Garrison, New York, NY, Ashley Cummings, Hunton & Williams, Atlanta, GA, Thomas J. Frederick, Winston & Strawn, Chicago, IL, Cindy L. Gantnier, Jason T. Jacoby, Hunton & Williams, Richmond, VA, Daniel C. Jordan, Hunton & Williams, McLean, VA, Elizabeth D. Jensen, Winston & Strawn, Chicago, IL, for Altria Group, Inc.

Bruce D. Ryder, J. William Newbold, James M. Cox, Michael B. Minton, Richard Paul Cassetta, Thompson Coburn LLP, St. Louis, MO, Edward Craig Schmidt, Matthew David Schwartz, Thompson Coburn, LLP, Washington, DC, Paige Q. Szajnuk, Thomas A. Duncan, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Co.

Michael V. Corrigan, Demetra Frawley, Mary Elizabeth McGarry, Simpson Thatcher & Barlett, New York, NY, William Salvatore D'Amico, Chadbourne & Parke, Washington, DC, Roy T. Englert, Jr., Robbins, Lawrence Saul Robbins, Russell, Englert, Orseck & Untereiner, Washington, DC, Timothy M. Hughes, Lawrence Edward Savell, F. John Nyhan, David L. Wallace, Jessica L. Zellner, Bruce G. Sheffler, Chadbourne & Parke LLP, New York, NY, Neil H. Koslowe, Shearman and Sterling LLP, Washington, DC, Garyowen P. Morrisroe, Chadbourne & Parke, New York, NY, Robert M. Rader, Winston & Strawn LLP, Washington, DC, Michael Asher Schlanger, Sonnenschein, Nath & Rosenthal, Washington, DC, for British American Tobacco, P.L.C.

Cynthia S. Cecil, Hunton & Williams, Richmond, VA, for Philip Morris Companies, Inc.

Patrick J. Coughlin, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., San Francisco, CA, Julian K. Fite, Tahlequah, OK, Frank Janecek, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Lloyd Benton Miller, Sonosky, Chambers, Sachese, Miller & Munson, Anchorage, AK, for Cherokee Nation.

Clausen Jr. Ely, James Alexander Goold, Joseph A. Kresse, Keith Allen Teel, John Vanderstar, Covington & Burling, Washington, DC, for Tobacco Institute, Inc.

David Mendelson, Kirkland & Ellis, LLP, for American Tobacco Co.

Stephen Printiss Murphy, Reed Smith, Washington, DC, for Novartis Consumer Health, Inc.

D. Jacques Smith, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Impax Laboratories, Inc.

Arnon D. Siegel, Robbins, Russel, Englert, Orseck & Untereiner, Washington, DC, for Pharmacia Corp.

Stephen Paul Mahinka, Morgan, Lewis & Bockius, L.L.P., Washington, DC, for Pfizer, Inc.

David Charles Shonka, Office of General Counsel, Washington, DC, for Federal Trade Com'n.

Steven D. Gordon, Holland & Knight, L.L.P., Washington, DC, for GlaxoSmithKline Consumer Healthcare, L.P.

## MEMORANDUM OPINION

KESSLER, District Judge.

This matter is now before the Court on Defendants'[1] Motion for Partial Summary Judgment on Claims that Defendants Ad-

---

1. Defendants are Philip Morris USA Inc. (f/k/a Philip Morris, Incorporated), R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobac- co Company), Lorillard Tobacco Company, Altria Group Inc. (f/k/a Philip Morris Companies, Inc.), British American Tobacco (Investments), Ltd., The Council for Tobacco Re-

vertised, Marketed, and Promoted Cigarettes to Youth and Fraudulently Denied Such Conduct. Upon consideration of the Motion, the Government's Opposition and the entire record herein, and for the reasons stated below, the Joint Defendants' Motion is **denied**.

## I. BACKGROUND

Plaintiff, the United States of America ("the Government") has brought this suit against the Defendants pursuant to Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.[2] Defendants are manufacturers of cigarettes and other tobacco-related entities. The Government seeks injunctive relief and billions of dollars for what it alleges to be an unlawful conspiracy to deceive the American public. The Government's Amended Complaint describes a four-decade long conspiracy, dating from at least 1953, to intentionally and willfully deceive and mislead the American public about, among other things, the harmful nature of tobacco products, the addictive nature of nicotine, and the possibility of manufacturing safer and less addictive tobacco products. Amended Complaint ("Am.Compl.") at ¶ 3.

The present Motion focuses on one subscheme of the overarching conspiracy alleged by the Government, namely the Government's allegations that the Defendants have deliberately marketed cigarettes to children and fraudulently denied doing so. According to the Government, even though the sale of cigarettes to children is illegal, and even though Defendants deny doing so, they have marketed their products to children. Defendants are allegedly motivated to target children as new smokers because they "fail to appreciate the risk that, by engaging in smoking while they are adolescents, they will become long term smokers because of the development of an addiction to nicotine." Am. Compl. at ¶ 95. Once addicted, these new smokers serve as "replacements" for older smokers who quit smoking or die. Am. Compl. at ¶ 94.

R.J. Reynolds' Joe Camel campaign is just one of the most well-known examples of what the Government characterizes as Defendants' practice of "aggressively target[ing] their campaigns to children." Am. Compl. at ¶¶ 96–97. According to the Government, Defendants have conducted research on young people and designed their marketing practices to exploit what they have learned about their interests and vulnerabilities, in order to induce them to smoke. Gov't Mem. in Opp'n at 7 (citing United States' Master Rule 7.1/56.1 Statement of Material Facts Demonstrating the Existence of Genuine Issues for Trial) ("Master Stmt"). Defendants have allegedly enticed children to smoke using advertising that "glamorizes smoking," using "content . . . intended to entice young people to smoke, for example, as a rite of passage into adulthood or as a status symbol." Am. Compl. at ¶ 96.

Defendants are also alleged to have advertised in stores near high schools, given away cigarettes at places where young persons congregate, paid for product placement in movies with youth audiences, placed advertisements in magazines with high youth readership, and sponsored sporting events, rock concerts, and other events of interest to children. Am.

---

search–U.S.A., Inc., the Tobacco Institute, Inc., and The Liggett Group, Inc.

**2.** The Complaint originally contained four claims under three statutes. On September 28, 2000, the Court dismissed Count One (pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651, et seq.) and Count Two (pursuant to the Medicare Secondary Payer provisions of the Social Security Act, 42 U.S.C. §§ 1395y(b)(2)(B)(ii) & (iii)). See United States v. Philip Morris, 116 F.Supp.2d 131 (D.D.C.2000).

Compl. at ¶ 96. At the same time, according to the Government, Defendants have consistently made false and misleading statements that their expenditures on advertising and marketing were directed exclusively at convincing current smokers to switch brands, not at enticing children to start smoking. Am. Compl. at ¶ 100.

Defendants vehemently deny that they have advertised, marketed and promoted cigarettes to children. In their Motion they seek summary judgment against the Government's allegations relating to what Defendants call "the youth marketing sub-scheme." Mem. in Supp. at 13. Defendants ask the Court to dismiss with prejudice all of the Government's racketeering acts [3] related to this sub-scheme along with the related claims.

These racketeering acts comprise two groups. The first category is actual cigarette advertisements that allegedly promote cigarettes to children along with conduct, apart from advertising, that furthers the goal of marketing smoking to children, such as obtaining surveys of youth smoking habits (collectively "youth marketing acts"). The second category of racketeering acts are Defendants' denials that they targeted their marketing at children.

Defendants advance three principal arguments that these racketeering acts should be dismissed:

(1) The youth marketing acts do not constitute RICO predicate acts of mail and wire fraud.

(2) Their conduct is protected by the First Amendment.

(3) Their denials of marketing to children were not part of a scheme to defraud anyone of "money or property" as required by the mail and wire fraud statutes.

Defendants are not entitled to summary judgment on the basis of any of these arguments, for the following reasons; consequently, the Government must be given the opportunity to prove its claims about Defendants' youth marketing sub-scheme at trial.

First, the youth marketing acts cannot be assessed in isolation, but must be evaluated in the context of the totality of the Government's allegations of fraud.

Second, whether Defendants have targeted children as replacement smokers and whether they have falsely denied doing so, involve disputed factual issues of intent that must be resolved at trial.

Third, the Government has, contrary to Defendants' argument, alleged a deprivation of "money or property," namely the purchase price consumers paid for cigarettes.

---

**3.** RICO prohibits individuals or entities from engaging in racketeering activity associated with an "enterprise." To successfully state a RICO claim, the Government must allege "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)(internal citation omitted). "Racketeering activity" includes, among other things, acts prohibited by any one of a number of criminal statutes. 18 U.S.C. § 1961(1). A "pattern" is demonstrated by two or more instances of "racketeering activity" ("predicate acts") that occur within ten years of one another. 18 U.S.C. § 1961(5). In this case, the alleged predicate acts are violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

The Government has alleged a total of 148 "racketeering acts" in support of its RICO claims. Racketeering Acts 1–116 are set forth in the Appendix to the Amended Complaint. The remaining Racketeering Acts are set forth in the Government's Supplemental Responses to Joint Defendants' First Set of Continuing Interrogatory Nos. 29–31 and 33–35 to Plaintiff.

Of these 148 racketeering acts, Defendants identify 44 as related to the youth marketing sub-scheme.

Fourth, it is irrelevant under the applicable case law that the challenged acts are not illegal *per se* and that the mailings are not alleged to contain misrepresentations.

Fifth, the Government's requested injunctive relief is not a basis on which to dismiss its RICO claims relating to youth marketing acts.

Finally, whether any of the challenged racketeering acts should be described as "petitioning" and thus immunized under the *Noerr–Pennington* doctrine, is a factual matter in dispute.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989).

## III. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT

### A. Claims Relating to Youth Advertising Must Be Decided in the Context of the Entire Alleged Scheme to Defraud

The Government has alleged a pervasive, overarching scheme to defraud the public of money going back fifty years and continuing into the present. According to the Government, this conspiracy has been carried out through a variety of means or sub-schemes, including the youth marketing sub-scheme. Defendants have also allegedly: disseminated false and misleading statements denying that smoking causes disease and that smoking is addictive, Master Stmt ¶¶ 227–384, 572–672; used sophisticated technologies to manipulate and increase the potency of nicotine in their cigarettes while repeatedly denying that they manipulated the level of nicotine in their products, *id.* at ¶¶ 673–764; fraudulently promised to sponsor independent research into the health risks of smoking, *id.* at ¶¶ 385–571; and marketed "low tar" cigarettes as less hazardous than other cigarettes, even though they knew that smokers of these cigarettes are "not appreciably reducing their health risk." Am. Compl. at ¶ 86, 87.

Defendants ask the Court to view the youth advertising acts in artificial isolation from the rest of the pervasive scheme alleged by the Government to assess whether, for example, the challenged Racketeering Acts properly constitute mail or wire fraud or meet the proof requirements for fraud. Defs.' Mem. in Supp. at 14, 27. However, claims relating to Defendants' alleged targeting of children as replacement smokers are just one component of the overarching scheme to defraud which the Government has alleged. The Government's theory is that the component sub-schemes described above collectively served the goal of sustaining and expanding the market for Defendants' cigarettes and maximizing their profits by defrauding consumers of the purchase price of cigarettes. The youth marketing sub-scheme can only be meaningfully assessed in the context of the entirety of the Defendants' alleged conduct.

The interdependence of the sub-schemes is demonstrated by the fact that predicate acts *not* identified by Defendants as youth-related are seen by the Government as having "furthered the 'youth marketing' component of the fraudulent scheme." Gov't Mem. in Opp'n at 16 n. 26. For that reason, predicate acts relating to other sub-schemes must be considered before the predicate acts challenged by Defendants in their Motion can be fully evaluated since these other acts may have contributed to the youth marketing sub-scheme. For example, the Government claims that Defendants' denials of the health risks of smoking and of the addictiveness of smoking and nicotine, denials not challenged in this Motion, have had an effect on young people deciding whether to try smoking. *Id.*

Therefore, summary judgment as to the youth marketing claims is inappropriate because, among other reasons, the Court must evaluate the over-all scheme to defraud based on the totality of the circumstances alleged, including the relationship of the challenged acts to the other sub-schemes. *See United States v. Godwin*, 272 F.3d 659, 666–667 (4th Cir.2001) ("In order to establish ... the scheme to defraud, the Government must prove that the defendants acted with the specific intent to defraud, which may be inferred from the totality of the circumstances and need not be proven by direct evidence.") (internal citation omitted). Because the sub-schemes are interdependent, the totality of circumstances necessary to evaluate the challenged racketeering acts goes beyond those particular acts challenged in this Motion and can only be properly understood in the context of a trial.

**B. Material Issues of Intent and Motive Are Very Much in Dispute**

██ Summary judgment with regard to the youth marketing acts is also inappropriate because material factual issues of intent and motive remain very much in dispute. The Government has put forth evidence, including expert opinions, to show that Defendants intentionally targeted youth as replacement smokers. *See generally* United States' Supplemental Rule 7.1/Rule 56.1 Statement of Material Facts Demonstrating the Existence of Genuine Issues for Trial Particular to Defendants' [Motion] ("Suppl.Stmt"). For example, Racketeering Act # 76 alleges that

> From about April 1, 1988, through about June 30, 1988, defendant [Reynolds] caused an advertisement for Camel cigarettes to be placed in various print media .... This advertisement was captioned "Get On Track with Camel's 75th Birthday!" and depicted the Joe Camel character in a Formula One-type automobile racing suit, opening a bottle of champagne, with racing cars whizzing by in the background.

App. to Compl at ¶ 76.

Government expert Michael Eriksen concludes that the Joe Camel campaign caused children and adolescents to smoke Camel Cigarettes, Suppl. Stmt at 43. According to Government expert Dean Krugman, the market share of Camel among adolescents rose 64 percent with the introduction of Joe Camel in 1988; he is of the opinion that Defendant Reynolds' and other Defendants' marketing campaigns are designed to appeal to youth. *Id.* at 44.

The Government has also put forth evidence to show that Defendants' denials of youth marketing were knowingly false. For example, alleged Racketeering Act # 89 concerns a 1990 letter from R.J. Reynolds' Public Relations Department to a citizen in response to the citizen's letter "expressing concern that the Joe Camel campaign, specifically the 'Camel Smooth

Character' campaign, appealed to youth." Suppl. Stmt. at 16. Reynolds' letter stated that its "advertising is directed to adult smokers and not younger people" and that "research shows that among all the factors that might influence a young person to start smoking, advertising is insignificant." *Id.*

As proof of the falsity of this statement, the Government points to internal documents that it says establish that R.J. Reynolds "sought to appeal to youth with its 'Joe Camel' advertising campaign."

> Years of internal research culminated in the testing and development of Joe Camel ... Between 1979 and 1982, R.J. Reynolds's CEO Edward A. Horrigan, Jr. initiated the Joe Camel campaign by asking his marketing department to look at the French "Funny Camel" campaign and see if R.J. Reynolds could reinvigorate Camel with a similar approach. According to Horrigan, people at the company were excited about the idea. The French "Funny Camel" campaign had been very effective with young people in France. As a February 7, 1984 memorandum from Dana Blackmar to Rick McReynolds about the "French Camel Filter Ad" stated: "I think the French Advertisement for Camel filters is a smash. It would work equally well, if not better, for Camel regular. It's about as young as you can get, and aims right at the young adult smoker Camel needs to attract." Horrigan testified that despite R.J. Reynolds's knowledge that the French "Funny Camel" was "as young as you can get," R.J. Reynolds did not specifically look at the impact the campaign might have on underage smokers.

Suppl. Stmt at 17.

The Government also relies on its expert's opinion that this campaign "succeeded in incorporating themes with appeal to an adolescent interest in sex and social approval." *Id.* (citing Expert Report of Anthony Biglan). The Government has submitted similar evidence as to the other allegedly false denials of youth marketing.

The question of fraudulent intent is a question of fact that is rarely appropriate for summary judgment. *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 711 (2d Cir.1991). Because the Government, as non-movant, has demonstrated that there are disputed material facts regarding whether the Defendants intentionally targeted children as replacement smokers and whether their denials of youth marketing were knowingly false, Defendants are not entitled to summary judgment. *See Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) ("it was error ... for the District Court to resolve the disputed fact of motivation at the summary judgment stage" where non-movant had presented circumstantial evidence in support of their claim).

## C. The Government Has Offered Sufficient Evidence of Intent to Defraud the Public of Money or Property

The mail and wire fraud statutes forbid "any scheme or artifice to defraud, or for *obtaining money or property* by means of false or fraudulent pretenses, representations, or promises...." 18 U.S.C. §§ 1341 and 1343 (emphasis added). Defendants claim that the predicate acts which allege that they falsely denied marketing to youth must be dismissed as a matter of law because the denials were not efforts to "obtain money or property."

The Government has alleged that Defendants made false and deceptive statements, including denials that they marketed to youth, "that were intended to induce the public to begin and continue smoking cigarettes and to thereby defraud the

public of money through the purchase of cigarettes." Gov't Mem. in Opp'n at 11. According to the Defendants, the Government defines "money or property" as either "enhanced profits" or the forestalling of regulatory efforts, neither of which is a legally cognizable deprivation under the mail and wire fraud statutes. Defs.' Mem. in Supp. at 29. However, the Government clearly explains that " 'the specific money or property that was the object of each alleged predicate act of mail or wire fraud' is the purchase price consumers paid for the cigarettes from 1954 to the present." *Id.* at 11 n. 17 (quoting U.S. Supp. Resp. to JD. First Set of Cont. Interrogs. Nos. 29–31 and 33–35, at 15). Because the Government has alleged a deprivation of "money or property," Defendants are not entitled to summary judgment on this basis.[4]

4. Defendants argue in passing that, even if the purchase price of cigarettes satisfies the "money or property" element of the mail and wire fraud statutes, the racketeering acts relating to denials of youth marketing must still be dismissed because "[t]he Government has not articulated ... any legally viable theory under which the manufacturers' *denials* that they marketed to youth would be material to any smoker's decision to purchase cigarettes." Mem. in Supp. at 28 n. 22. (emphasis in original). Defendants are correct that materiality is an element of mail fraud. *Neder v. United States*, 527 U.S. 1, 22, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). A matter is material where a reasonable person "would attach importance to its existence or nonexistence" in choosing how to act or "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining" how to act. *Id.* at 22 n. 5, 119 S.Ct. 1827.

However, again, the Defendants' argument artificially isolates the challenged predicate acts from the context of the overall scheme to defraud. Here, what the Government has alleged is a multi-faceted scheme "conceived and ... executed largely as a public relations campaign, intended to reassure the public—

## D. Predicate Acts Need Not Be Illegal *Per Se* or Contain Misrepresentations

■ Defendants claim that because "marketing to youth does not *per se* constitute a predicate act under RICO", a scheme to market cigarettes to children is not a scheme to defraud. Defs.' Mem. in Supp. at 14–15 (internal quotation omitted). However, it is irrelevant that marketing to children does not *per se* constitute a predicate racketeering act, so long as the conduct constitutes wire or mail fraud. *See* supra at 4 n3.

In order to prove mail fraud,[5] the Government must prove two elements: (1) a scheme to defraud and (2) the use of the mails in furtherance of the scheme. *Carter v. United States*, 530 U.S. 255, 262, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). Defendants argue that the Government's

especially consumers—that Defendants were concerned about, and taking action on, different important aspects of their business." Mem. in Opp'n at 9. The Government has presented evidence, disputed though it may be, that Defendants' "claimed commitment to acting responsibly," including denying that they market to young people, was known to be important to consumers. Mem. in Opp'n at 9–10. The Government has alleged that the Defendants have, in their advertisements and public statements, "repeatedly restated their claimed commitment to acting responsibly," including claiming that they did not market to children, in order to reassure the public. Gov't Mem. in Opp'n at 9. According to the Government, these various statements were considered and intended to be important to consumers, and Defendants "knew that consumers would likely regard their representations as important." *Id.* at 10. Thus, Defendants' denials of youth marketing are material under *Neder*.

5. "The requisite elements of 'scheme to defraud' under the wire fraud statute ... and the mail fraud statute ... are identical. Thus, cases construing mail fraud apply to the wire fraud statute as well." *United States v. Lemire*, 720 F.2d 1327, 1335 n. 6 (D.C.Cir. 1983).

claims relating to youth marketing fail as a matter of law because, as the Government concedes, neither the advertisements nor the other marketing conduct "misrepresent or conceal any fact."[6] Defs.' Mem. in Supp. at 16. However, it has long been the law that, in order to establish mail fraud, "it is not necessary that the individual mailing relied upon . . . be shown to be in any way false or inaccurate, if the matter mailed is utilized in furtherance of or pursuant to the scheme to defraud." *United States v. Reid,* 533 F.2d 1255, 1263 (D.C.Cir.1976). *See also Schmuck v. United States,* 489 U.S. 705, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) ("innocent" mailings may supply the mailing element in mail fraud case); *Atlas Pile Driving Co. v. DiCon Financial Co.,* 886 F.2d 986, 991 (8th Cir.1989) ("no misrepresentation of fact is required in order to establish mail fraud.").

Here, assuming the truth of the evidence of the Government as the non-moving party, and drawing all justifiable inferences in its favor, as required by Rule 56, the challenged acts are in furtherance of the Defendants' alleged scheme to defraud. The Government has offered proof as to each advertisement that it was in furtherance of the overall scheme to defraud. *See e.g., supra,* p. 9 (Racketeering Act No. 76); *see generally,* Suppl. Stmt. at 42–73 (offering proof that Racketeering Acts Nos. 76, 83, 84, 97, 102, 135, 136, 137, 138, 139, 140, 141, 142, 147, and 148 (Defendants' Cigarette Advertisements) were in furtherance of the alleged scheme to defraud). In light of these disputed material facts concerning whether the advertise-ments and other youth marketing acts were in furtherance of the overall scheme, summary judgment must be denied.

## E. The Government's Conspiracy Claims Do Not Violate the First Amendment

Defendants assert, on a variety of grounds, that the Government's RICO claims violate the First Amendment. For the reasons set forth below, these arguments cannot prevail.

### 1. Defendants Are Not Entitled to Summary Judgment on the Basis of The Injunctive Relief Sought by the Government

■ According to Defendants, the Government's characterization of their advertising as "fraud" in pursuit of injunctive relief relating to cigarette marketing "violates the First Amendment." Defs.' Mem. in Supp. at 16. Defendants rely on *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001), for the proposition that "speech restrictions like those sought by Plaintiff here are unconstitutional." Defs.' Mem. in Supp. at 16. In *Reilly,* the Supreme Court held, *inter alia,* that certain Massachusetts regulations that restricted advertising of cigars, cigarettes and smokeless tobacco violated the First Amendment because their "broad sweep" imposed an undue burden on speech. 533 U.S. at 561, 121 S.Ct. 2404 (internal citation omitted).

Defendants' reliance on *Reilly* is misplaced for two related reasons. First, and very obviously, any injunctive relief in this case would only be imposed *after* a finding

---

**6.** Joint Defendants' Continuing Interrogatory No. 32 asked the Government to "identify the fact misrepresented or concealed in connection with each predicate act of racketeering alleged in the Complaint." Defs.' Mem. in Supp. at 14. As to each of the racketeering acts involving an advertisement relating to the youth marketing sub-scheme, the Government has responded by stating that "[o]n its face, this mailing does not misrepresent or conceal any fact." *Id.* (citing Pl.'s Supplemental Resp. to Joint Defs.' First Set of Continuing Interrog. No. 32 at Nos. 76, 83, 84, 97, 102; Pl.'s Second Supplemental Resp. to Joint Defs.' First Set of Continuing Interrog. Nos. 29 and 32 at Nos. 135–42, 147, 148).

by the Court that Defendants had committed acts of mail and/or wire fraud in violation of RICO. If the Government successfully establishes that the Defendants disseminated their advertising in furtherance of an overall scheme to defraud, the First Amendment will not present an obstacle to appropriate injunctive and equitable relief to remedy the fraud.[7] *See United States v. Carson*, 52 F.3d 1173, 1185 (2d Cir.1995).

In *Carson*, the Second Circuit upheld an injunction imposed on a former union officer under RICO enjoining him from future racketeering. The injunction did not violate First Amendment freedom of association because "an individual's right to freedom of association may be curtailed to further the public's compelling interest in eliminating the public evils of crime, corruption, and racketeering" (internal quotation omitted). *Id.* Similarly here, if the Court finds a RICO violation, an injunction

that curtails Defendants' speech in some way is not necessarily barred by the First Amendment.[8] Any such injunctive relief would, of course, have to be sufficiently narrowly tailored to comply with the relevant First Amendment caselaw.[9]

Second, in *Reilly*, the Massachusetts Attorney General "assumed for purposes of summary judgment that [defendants'] speech [was] entitled to First Amendment protection." *Id.* at 555, 121 S.Ct. 2404. Here, by contrast, the Government makes no such concession. It argues that Defendants' youth marketing acts promote an illegal activity (purchase of cigarettes by minors) and constitute conduct in furtherance of a multifaceted scheme to defraud.

The Supreme Court has recently reiterated, albeit in a different factual context, that "the First Amendment does not shield fraud." *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 123 S.Ct. 1829, 1836, 155 L.Ed.2d 793

7. In *Reilly*, the Supreme Court reiterated the applicability of the analysis set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 569, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), for assessing the validity of any injunctive relief which implicates First Amendment concerns. The Court emphasized that the "critical inquiry" under *Central Hudson* "requires a reasonable fit between the means and ends of the regulatory scheme." 447 U.S. at 561, 100 S.Ct. 2343. Throughout its detailed and careful examination of the Massachusetts regulations, the Court focused its attention on whether the State had "adopted an appropriately narrow means of advancing [its] interest" in preventing access to tobacco products by minors. *Id.* at 569, 121 S.Ct. 2404. While engaging in this fact-specific analysis, the Court upheld some of the regulations and invalidated others. Thus, in *Reilly*, the Supreme Court laid out in great detail the analysis and the detailed considerations that must be used to craft any injunctive relief to regulate commercial speech. *Id.* at 553–56, 121 S.Ct. 2404. This Court will, of course, follow the Supreme Court's blueprint should liability be established.

8. *See also United States v. International Brotherhood of Teamsters*, 708 F.Supp. 1388, 1402 (S.D.N.Y.1989) ("section 1964(a) of RICO grants sweeping powers to the federal district courts to fashion appropriate civil remedies for RICO violations.... If the Government prevails at trial, then it will be the court's responsibility to fashion an equitable remedy to restrain future violations of RICO ....").

9. The Government insists that the injunction it seeks relating to youth marketing would not amount to the kind of unnecessarily broad suppression of speech that the Supreme Court has found impermissible under the First Amendment. *See* Gov't Mem. in Opp'n at 24–25. ("the injunction on marketing to youth sought by the United States would not impose an absolute prohibition on all cigarette advertising in any particular locations, nor would it unduly impinge on the lawful communication of information to adult consumers"). Obviously, it is premature to speculate as to what the parameters of appropriate relief would be.

(2003). As *Reilly* itself makes clear, for commercial speech to come within the protection of the First Amendment it must "concern lawful activity and not be misleading." 533 U.S. at 554, 121 S.Ct. 2404. *See also Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 638, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) ("[t]he States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading ... or that proposes an illegal transaction" (internal citations omitted).) [10] The Defendants will have a full opportunity at trial to demonstrate that the conduct in question was not in furtherance of a scheme to defraud.

## 2. There Are Material Facts in Dispute About Whether the Challenged Predicate Acts Occurred in the Context of Petitioning the Government, as Required under the *Noerr-Pennington* Doctrine

■ Defendants seek to immunize all of their public denials about having marketed to children under the *Noerr-Pennington* doctrine.[11] The *Noerr-Pennington* doctrine immunizes those who petition the government for redress from anti-trust liability even if they are motivated by anti-competitive intent. *Professional Real Estate Investors v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 56, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). "The 'doctrine is a direct application of the Petition Clause' of the First Amendment." *Falise v. American Tobacco Co.,* 94 F.Supp.2d 316, 350 (E.D.N.Y.2000) (quoting *Kottle v. Northwest Kidney Centers,* 146 F.3d 1056, 1059) (9th Cir.1998).[12] Although it originally "arose in the context of lobbying for legislative action, it was subsequently expanded to include activities aimed at the executive and judicial branches of government." *Id.* at 350–351 (internal citation omitted).[13]

According to the Defendants, all of the denials of youth marketing identified by the Government as predicate acts "are statements of opinion, made in the course

---

**10.** Where commercial speech does concern lawful activity and is not misleading "the government may impose restrictions that advance a 'substantial' government interest and are no 'more extensive than is necessary to serve that interest.' " *Whitaker v. Thompson,* 353 F.3d 947, 952–53 (D.C.Cir.2004) (quoting *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)).

**11.** The doctrine has its origins in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)(holding that "the Sherman Act does not prohibit ... persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly") and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The *Noerr* Court adopted its narrowing construction of the Sherman Act "in significant part as a means to avoid finding a conflict

between [the Act] and the First Amendment right to petition." *Whelan v. Abell,* 48 F.3d 1247, 1254 (D.C.Cir.1995).

**12.** *Noerr-Pennington* immunity is not absolute. It allows a "sham" exception for "situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as a ... weapon. A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *City of Columbia v. Omni Outdoor Advertising,* 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) (emphasis in original) (internal citations omitted).

**13.** The doctrine has been held applicable in RICO suits involving allegations of antitrust injury. *International Brotherhood of Teamsters, Local 734 v. Philip Morris, Inc.,* 196 F.3d 818, 826 ( 7th Cir.1999). In that case, the court held that "[t]o the extent the manufacturers' statements [about the relationship

of petitioning the Government, and are fully protected by the First Amendment." Defs.' Mem. in Supp. at 20. They make much of the fact that Racketeering Acts ## 125–127 in particular relate to letters from the chief executives of Defendant manufacturers to Joseph Califano, Jr., President Jimmy Carter's Secretary of Health, Education and Welfare. Defs.' Mem. in Supp. at 1. However, even assuming *arguendo* that these few letters represent "petitioning," very few of the other challenged Acts appear on their face to be fairly characterized as acts of petitioning the Government. Several of them are simply press releases allegedly distributed by Defendants to newspapers and news outlets, not to government officials. *See e.g.*, Appendix at 34, 36, 38 (Racketeering Acts Nos. 87, 93, 100). Others are statements made to members of the public. *See e.g.*, App. to Compl. at 35 (Racketeering Acts # 89 (described at supra p. 10)).

It is true that the mere fact that conduct intended to influence government officials happens to involve the use of a public relations campaign is not sufficient to defeat *Noerr-Pennington* immunity. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 503, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988). Indeed, *Noerr* itself involved a publicity campaign aimed at influencing government action. However, it certainly does not follow that all use of advertisements or public relations campaigns is to be automatically characterized as petitioning of the government, and therefore immunized under the *Noerr-Pennington* doctrine.[14]

Here, whether the conduct in question is petitioning is in dispute. The Government contends that the conduct was undertaken "pursuant to a multifaceted fraudulent scheme aimed at defrauding the public," Gov't Mem. in Opp'n at 26. Because a determination of whether the challenged predicate acts are acts of petitioning is a fact-intensive inquiry that can only be resolved at trial, Defendants are not entitled to summary judgment on the basis of the *Noerr-Pennington* doctrine. *See Allied Tube & Conduit Corporation*, 486 U.S. 492 at 499, 108 S.Ct. 1931 (applicability of *Noerr* immunity "varies with the context and the nature of the activity").

## III. CONCLUSION

For all the foregoing reasons, the Defendants are not entitled to summary judgment as to the Government's allegations relating to claims that they advertised, marketed and promoted cigarettes to

---

of smoking and health] were designed to influence Congress—to get favorable laws and ward off unfavorable ones—they cannot be a source of liability directly under the *Noerr-Pennington* doctrine." *Id.* at 826.

Defendants claim that the doctrine has been extended beyond the anti-trust context. Mem. in Supp. at 21. Because the Court finds that there are material facts in dispute about whether the challenged acts constitute "petitioning", there is no need to reach the scope of the *Noerr-Pennington* doctrine.

**14.** *See Falise*, 94 F.Supp.2d at 351–352. Plaintiffs in that RICO case alleged that defendant tobacco manufacturers had historically invested RICO racketeering funds into a "scorched earth litigation strategy" intimidating them into not suing defendants. Defendants argued that *Noerr-Pennington* doctrine immunized their earlier litigation strategies.

The court held that the *Noerr-Pennington* doctrine did not apply because the challenged conduct had nothing to do with petitioning. "Defendants, having been hailed into court in the earlier litigations, were clearly not exercising their right to petition the government." Instead, Defendants' right to utilize the tools of the adversarial process "invoke[d] issues of procedural due process under the Fifth and Fourteenth Amendments, rather than the First Amendment right to petition the government."

youth and fraudulently denied such conduct, and their Motion is **denied.**

An Order will accompany this opinion.

### *ORDER # 501*

This matter is now before the Court on Defendants'[1] Motion for Partial Summary Judgment on Claims that Defendants Advertised, Marketed, and Promoted Cigarettes to Youth and Fraudulently Denied Such Conduct. Upon consideration of the Motion, the Government's Opposition and the entire record herein, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Joint Defendants' Motion is **denied.**

---

1. Defendants are Philip Morris USA Inc. (f/k/a Philip Morris Incorporated), R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobacco Company), Lorillard Tobacco Company, Altria Group Inc. (f/k/a Philip Morris Companies, Inc.), British American Tobacco (Investments), Ltd., The Council for Tobacco Research–U.S.A., Inc., the Tobacco Institute, Inc., and The Liggett Group, Inc.